## Glatfelter *v.* Mendels, Appellant.

*Evidence—Demand—Self-serving evidence—Correspondence.*

1. In an action of assumpsit where it is necessary for the plaintiff to prove demand in order to lay the foundation for recovery he may introduce in evidence a letter addressed by himself to the defendant, and such letter is admissible as a whole, although it may contain statements which are self-serving; and this is especially the case where there is in evidence the defendant's reply containing a vigorous denial and giving the attitude of the defendants with reference to the plaintiff's statement.

*Trial—Charge—Points—Request for additional instructions.*

2. Assignments of error to the effect that the court below did not specifically charge as to certain matters will not be considered, where no request for such instructions on such matters was made; and this is especially so where it is admitted that the court's answers to points submitted were technically correct and the complaint is that the court should have added something thereto.

*Contracts—Instruction—Trade names.*

3. Where a word has acquired a particular meaning in a trade or business that meaning may be applied in construing a contract containing such word.

Argued March 14, 1911. Appeal, No. 2, March T., 1911, by defendants, from judgment of C. P. Adams Co., Aug. T., 1909, No. 139, on verdict for plaintiff in case of U. L. Glatfelter v. Emanuel Mendels and Abraham Mendels, trading as Mendels Bros. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass for the wrongful conversion of goods. Before SWOPE, P. J.

At the trial when Emanuel Mendels was on the stand he was asked the following questions: Q. State whether or not you, or any person for you, has made demand on the defendants for the return of the property? A. We have. Q. How, in what shape was the demand made, telegraph, telephone, or how? A. You wrote a letter, that is all I know. Q. Please look at that letter."

Mr. Sheely. Objected to for the reason that the witness did not write the letter.

Mr. Hersh. He was present at the time I wrote it. State whether or not you saw that letter prepared? "A. I did. Q. By whom was it prepared? A. By you."

The Court: What is the date of that letter? "A. July 26, 1909."

The Court: You have testified the defendants occupied this building until October 15. "A. Yes, sir, they paid the rent, I do not know whether they were there."

The Court: I understood you to say you received the key from them on October 14, and the goods were removed——

Mr. Hersh: Between July 22 and 24, 1909. "Q. Exhibit 'D' shown witness. State whether or not this letter was dictated in your presence? A. It was. Q. After the letter was written state whether or not it was read over to you

by me? A. By you. Q. To whom was this letter dictated by me? A. To a young lady. Q. And after it was prepared it was read over to you? A. Yes, sir."

Mr. Hersh: Exhibit "D" offered in evidence.

Mr. Sheely: For what purpose?

Mr. Hersh: To show the demand on Mendels Bros. to return the property.

Mr. Sheely: Objected to.

The Court: Objection overruled, exception by defendant; bill sealed. [1]

"July 23, 1909.

"MENDELS BROS.,

   "NO. 115 HOPKINS PLACE,

      "BALTIMORE, MD.

"Gentlemen:—

"I have been this day retained by U. L. Gladfelter of Adams County, who has placed in my hands for collection a claim of $300.00 for damages sustained by him by your trespass in the removal of some valuable fixtures and personal property, owned by him and leased to you, and which were recently removed from his wrapper factory at East Berlin, Adams County, Pa. This property so removed by you consisted of the following articles, to wit: 48 poplar tables, 3½ by 1 foot and 2 inches; 26 iron stands; 47 transmitters; 48 split pulleys; 48 iron pedals; 48 pedal rods, 94 pedal brackets; 84 feet of machine table troughs; 95 feet of shafting.

"Unless this matter is arranged or the goods returned to Mr. Gladfelter within the next ten days, proceedings will be instituted against you by foreign attachment in Adams County, and we will be compelled to enforce our rights in the premises. Under your written contract with Mr. Gladfelter, your conduct in this matter has been illegal and irregular in every way, and unless we hear from you within the time mentioned, proceedings will be instituted without further notice or delay.

                    "Yors truly,

                         "W.M. HERSH,"

"Q. All the goods that are mentioned in there are goods which you leased to them and what they took away? A. I did not know they had taken away the electric fixtures nor the tables, but everything that is in there they did take." Mr. Hersh reads exhibit "D" to jury.

Plaintiff presented these points:

4. A written contract is presumed to contain the whole contract between the parties, and the jury must so find unless they are satisfied by clear and convincing evidence that another part of the agreement was in fact made at the same time, but was omitted by fraud, accident or mistake. *Answer:* This point is affirmed in connection with our general charge. [3]

5. Where a word has acquired a particular meaning in a trade or business, that meaning may be applied in construing the contract. *Answer:* This point is affirmed. [4]

6. If the jury believe from the evidence that the word "Machines" has a regular trade meaning and that the same is the trade meaning for machine heads only and does not apply to power tables or other equipment, the jury can apply this meaning in construing what the contract was. *Answer:* This point is affirmed. [5]

The court charged as follows:

Gentlemen of the jury: The plaintiff has brought this action for the purpose of recovering from the defendant firm certain damages which he alleges he suffered by reason of the defendant removing from the plaintiff's sewing factory in East Berlin, on July 22 last, certain personal property without authority or legal right so to do. The defendant's defense to this action is that the removal of the property from the sewing factory of the plaintiff, except what they bought and paid for to the plaintiff, they had a legal right so to .remove. The plaintiff's action and the defendant's defense is based upon an article of agreement in writing, selling and leasing certain property, bearing date September 10, 1907. The plaintiff's claim is based upon the article as it is written. The defendant's

defense is based on the article as written and also on certain oral declarations alleged to have been made by the plaintiff contemporaneous with the preparation and signing of the written agreement, and without which oral arrangement and agreement the defendant alleges the defendant firm would not have signed the written agreement.

[We instruct you, gentlemen, that when an agreement is reduced to writing it is presumed to contain the whole contract between the parties, and the jury must so find unless you are satisfied that the instrument was obtained by fraud, accident or mistake, or that there is an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed, then parol evidence can be given to prove fraud, although it contradict the instrument; but in such case the evidence must be clear, precise and indubitable, not in the sense that there must be no opposing evidence, but in the sense that it must carry clear conviction of its truth.] [6]

[We also instruct you that where a word has acquired a particular meaning in a trade or business that that meaning may be applied in construing the contract.] [7]

Verdict and judgment for plaintiff for $346.70. Defendants appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; and (3–7) above instructions, quoting them.

*John D. Keith*, with him *W. C. Sheely*, for appellants.— The rule that self-serving declarations made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of the party who made them, is established by an unbroken line of decisions: Craig v. Craig, 5 Rawle, 91; Quigley v. Swank, 11 Pa. Superior Ct. 602; Com. v. Kay, 14 Pa. Superior Ct. 376; White v. Black, 14 Pa. Superior Ct. 459;

Com. v. Miller, 31 Pa. Superior Ct. 317; Clever v. Hilberry, 116 Pa. 431; Dempsey v. Dobson, 174 Pa. 122; Beach v. Wheeler, 24 Pa. 212.

It was error to admit parol proof as to the meaning of the contract: Barnhart v. Riddle, 29 Pa. 92; Rouseville v. Cornplanter, 29 Pa. Superior Ct. 214; Bialas v. Elder, 44 Pa. Superior Ct. 219; Miller v. Wiggins, 227 Pa. 564; Hagen Co. v. Greenwood, 27 Pa. Superior Ct. 239.

There is a clear analogy between the requirements of a valid "custom" and the requirements of a valid "trade term:" Collins v. Mechling, 1 Pa. Superior Ct. 594; Miller v. Wiggins, 227 Pa. 564; Prigg v. Preston, 28 Pa. Superior Ct. 272.

*Wm. Hersh,* for appellee.

OPINION BY BEAVER, J., April 17, 1911:

The plaintiff sought to recover from the defendants in an action of trespass the value of certain property removed from a building belonging to the plaintiff with other property which had been sold by the plaintiff to the defendants, the same not having been included, as was claimed, in the sale, but which had been leased together with the property sold.

1. To lay the foundation for recovery, it was necessary to prove demand. In order to do this, the plaintiff offered in evidence a letter written by his attorney, in his presence and with his sanction, making demand for the return of the property and stating his view of the transaction. This was objected to by the defendants, and the first and second assignments of error relate to its admission by the court. The object for which the letter was admitted was limited by the court simply for the purpose of showing demand before the suit was brought. In order to consider the question in all its bearings, it is perhaps necessary to say that the reply of the defendants, through their attorney, to this letter was subsequently offered in evidence and was admitted. We have, therefore,

a letter of the plaintiff addressed to the defendants, making demand for the return of the property and containing statements which may be called self-serving. We have also a letter in reply, vigorous in denial and giving the attitude of the defendants with reference to the plaintiff's statement. Wherein is there any real distinction between a correspondence of this kind and a conversation covering the same ground? We see none and fail to see why it was necessary for the court to limit the object of the offer.

Crossgrove v. Himmelrich, 54 Pa. 203, presents a situation which is practically parallel. Mr. Justice THOMPSON, in the opinion in that case, says: "5. The 5th bill of exception is to the admission of the written statement of the demand on Wilcox for the hay on the defendants' order, his refusal, and notice of the election of the plaintiffs to rescind the contract. The objection was that it contained declarations of the plaintiffs in their own favor. Suppose it did, it was made to the faces of the defendants, and not behind their backs, and they might have denied the truth of any declaration in it and required proof, if they thought proper. This objection was somewhat extraordinary certainly. What parties say to each other about a subject of dispute is always evidence if a suit grow out of it. I can hardly suppose that in taking this exception the counsel expected to reverse this rule, and I am therefore at a loss to conjecture why it was taken." Surely if a demand had been made verbally and a conversation had ensued between the plaintiff and the defendants relating to the subject-matter of the demand, there can be no question but that it would have been competent and relevant. Why, therefore, should not the entire letter be competent, in view of the fact that the defendants replied thereto and their reply was in evidence?

2. The fourth point submitted by the plaintiff was: "A written contract is presumed to contain the whole contract between the parties, and the jury must so find, unless they are satisfied by clear and convincing evidence that another part of the agreement was in fact made at

the same time, but was omitted by fraud, accident or mistake," which was answered: "This point is affirmed in connection with our general charge." The part of the charge referred to is assigned for error in the sixth assignment and is as follows: "We instruct you, gentlemen, that when an agreement is reduced to writing it is presumed to contain the whole contract between the parties, and the jury must so find, unless you are satisfied that the instrument was obtained by fraud, accident or mistake, or that there is an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed, then parol evidence can be given to prove fraud, although it contradict the instrument; but in such case the evidence must be clear, precise and indubitable, not in the sense that there must be no opposing evidence, but in the sense that it must carry clear conviction of its truth." This part of the charge seems to us to cover the ground clearly and succinctly, as shown in very many well-settled decisions, which are so well known that it is not necessary to more than allude to their conclusion. The answer to the point practically covers the same ground. The appellants admit that "The instructions complained of under these assignments may contain a correct statement of the rule governing cases where parol evidence is offered to contradict, vary or add to the express terms of a written contract. But in this case no attempt was made to offer parol evidence for that purpose. The parol evidence here was offered only for the purpose of explaining and identifying the subject-matter of the written contract."

The claim of the plaintiff, as we understand it, was that certain trade terms, describing property sold, and that which was leased, needed explanation, and that with that explanation, which was clearly competent by parol testimony, and with the interpretation placed thereon by the testimony of the defendants as to what those trade terms meant, the claim of the defendants completely contra-

dicted the written agreement. It seems to us, therefore, that the instructions of the court were not only theoretically correct, as admitted by the defendants, but had a practical bearing upon the case. The defendants presented no points and made no verbal request during the charge for instructions as to points in which they now allege that the charge of the court was insufficient and inadequate.

In the late case of Spring City Brick Co. v. Brick Machine Mfg. Co., 39 Pa. Superior Ct. 7, our Brother HENDERSON said, at p. 25, in language which has singular application here: "As we understand the argument of the counsel for the appellant, the answers to the points assigned for error in the seventeenth and eighteenth assignments are admitted to be correct. The complaint seems to be that the court should have added something thereto, but it was not the duty of the court to enter into a discussion of the subject presented in the points. If any explanation or elaboration of the answer was desired by the plaintiff, the attention of the court should have been called to it. Assignments of error to the effect that the court below did not specifically charge as to certain matters will not be considered, where no request for such instructions on such matters is made: Murtland v. English, 214 Pa. 325."

3. The fourth, fifth and seventh assignments relate to the same subject. The court said, as assigned for error in the seventh: "We also instruct you that where a word has acquired a particular meaning in a trade or business, that that meaning may be applied in construing the contract. Now in the first place we will read to you certain points presented on the part of the plaintiff, with the request that we answer the same." The fifth point (which is assigned for error in the fourth assignment) was: "Where a word has acquired a particular meaning in a trade or business, that meaning may be applied in construing the contract. Answer: This point is affirmed." The sixth point and its answer, as assigned for error in the fifth assignment, are: "If the jury believe from the evidence that the word 'machines' has a regular trade meaning and that the same

is the trade meaning for machine heads only and does not apply to power tables or other equipment, the jury can apply this meaning in construing what the contract was. Answer: 'This point is affirmed."

The defendants endeavor, by confusing terms, to confuse the ideas relating thereto, and their effort is to substitute the usage or custom of trade for terms descriptive of the articles referred to in the written agreement. It is admitted by the appellants "that the rule undoubtedly is that where the words descriptive of the subject-matter in a written contract are susceptible of more than one meaning, parol evidence of a trade usage or trade meaning is admissible to explain them." There was no effort to show a usage or custom of trade by the plaintiff, as we understand it. Their effort was to simply show what the terms "machine" and "dynamo generator" meant and that they did not include the power tables and other fixtures connected therewith. The points, therefore, were entirely germane and the answers of the court correct.

In Carey v. Bright, 58 Pa. 70, Mr. Justice SHARSWOOD, in commenting upon the meaning to be applied to the term "collieries," says, at p. 82: "If this evidence was admissible, it was certainly very relevant and important. Whatever objections may exist in general to evidence of particular customs or usages, it seems to be within the scope of all the cases, both in this state and elsewhere, to show by the testimony of persons engaged in any particular trade or business what is the meaning which belongs to a term or name given to any particular class of objects or property in such trade or business, when that term or name is used in a contract, whether written or verbal. Though the construction of written instruments is exclusively with the court, yet they cannot and are not expected to understand the meaning of all terms used in art, science or commerce. Experts then may be called in, and the question upon their testimony must necessarily be referred to the jury. Mr. Starkie has stated the rule with great precision: 'Where terms are used which are known

and understood by a particular class of persons, in a certain special and peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject-matter, and the case seems to fall within the same consideration as if the parties in framing their contract had made use of a foreign language which courts are not bound to understand.' "

The object of the plaintiff was to show what is the meaning of the term "machine" and of other terms used to designate the property sold and also the property leased. There was no evidence of any usage or custom of trade and we think, therefore, the points were not only proper in themselves but were correctly answered. The assignments, therefore, relating to this subject are overruled.

4. As to the eighth assignment, the objection to the charge of the court, as being inadequate, is extremely indefinite—not more definite than the thought in the mind of the defendants when the case was tried. There was no intimation at the trial of any additional instructions which the defendants wished the court to give to the jury. It would seem as if the thought of inadequacy was raised in the mind of the defendants after the trial.

It seems to us, on the view of the entire case and of the charge of the court and the answers to the points, that the questions involved were fully covered in a clear and satisfactory manner, and this would seem to have been the opinion of the appellant's counsel at the time, because no points were presented by them and no suggestions of any kind made to the court in its charge to the jury.

The case was fairly tried and the real questions involved fully submitted to the jury in a satisfactory way. We are entirely satisfied with the manner in which this was done, as well as with the result. All of the assignments of error are overruled.

Judgment affirmed.