Emmons *v.* McCreery et al., Appellants.

Argued January 19, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Clarence E. Hall,* of *Orr, Hall & Williams,* for appellants.—Parol evidence contrary to the terms of the agreement is inadmissible, in the absence of fraud, accident or mistake: Heller v. Heller, 3 Pa. D. & C. 246; Crelier v. Mackey, 243 Pa. 363; Gianni v. Russell & Co., 281 Pa. 320; Chapin v. Iron Co., 145 Pa. 478.

The agreement of May 28, 1926, confers upon defendant the authority to sell without notice such securities as are in his hands, and the case thus falls clearly into the classification of an authority coupled with an in-

terest: Blackstone v. Buttermore, 53 Pa. 266; Yerkes's App., 99 Pa. 401; Boyer v. Nesbitt, 227 Pa. 398; Union Ins. Co. v. Allegheny, 101 Pa. 250; Harvey v. Bank, 119 Pa. 212; Radich v. Hutchins, 95 U. S. 210.

There must be knowledge to establish a waiver: Diehl v. Ins. Co., 58 Pa. 443; Girard F. & M. Ins. Co., v. Hebard, 95 Pa. 51.

*L. Stauffer Oliver,* for appellee.—That a broker may waive his right to sell without notice has clearly been established by the leading case of Rosenthal v. Brown, 247 N. Y. 479, 160 N. E. 291. See also Rea v. Transfer Co., 201 Pa. 273; Thomas v. Boyle, 265 Pa. 487; Cleveland v. Salwen, 292 Pa. 427.

As to the general duty of a stockbroker to demand margin, and also give the customer full and complete notice of the sale and intention to sell, see Pearson v. Kurtz, 280 Pa. 34; Berberich's Est., 257 Pa. 181; Conynham's App., 57 Pa. 474; Fitchthorne v. Barclay, 14 Pa. D. & C. 83.

Plaintiff made no attempt to prove, as appellants claim, a contemporaneous parol agreement contrary to the written card signed by plaintiff.

As the admissibility in evidence of a letter sent by the plaintiff and his counsel to defendants, setting forth plaintiff's case, written thirteen weeks after the alleged conversion, we cite: Glatfelter v. Mendels, 46 Pa. Superior Ct. 562; Crossgrove v. Himmelrich, 54 Pa. 203; Hershey v. Love, 278 Pa. 161.

Where a customer repudiates a certain transaction, and thereafter receives a statement of the account, which embraces the transaction complained of, the prior repudiation will be equally effective as would a protest concerning the statement itself.

A wrongdoer cannot compel the injured party to take action or make an election in regard to the wrong done: Berberich's Est., 257 Pa. 181.

It is conclusively settled in this State that a customer, who has been injured by the wrongful sale of a broker, may continue to deal with the broker for the purpose of putting his account in shape for removal to another broker, and is not obliged to close out his account immediately after the wrongful sale: Gervis v. Kay, 294 Pa. 518.

Correspondence is admissible, though phrases appear therein favoring the contention of the one presenting it, as in the case of the production of a letter necessary to show a demand for payment: Hershey v. Love, 278 Pa. 161; Holler v. Weiner, 15 Pa. 242.

This court has characterized brokers, who sell customers' securities without notice, as "wrongdoers," and has referred to such sales by them as "defendant's wrong" and as a "tort": Berberich's Est., 257 Pa. 181; Gervis v. Kay, 294 Pa. 518.

OPINION BY MR. JUSTICE KEPHART, March 14, 1932:

Emmons, appellee, recovered in the court below for the conversion of certain securities sold by McCreery & Company, appellants. Emmons, who had been trading with McCreery & Company, stockbrokers, for a number of years, had in 1926 signed an agreement, in substance as follows: "It is agreed between us......that all securities carried in the customer's [appellee's] account ......are pledged as collateral security for any and all claims and demands that the broker may now or hereafter have against the customer, and, waiving all notice, the sale......of the above or any other securities in the customer's account, or that may be held by the broker, is hereby authorized......whenever it is deemed necessary by the brokers for their protection." It is clear from the terms of this agreement that he thereby unconditionally authorized the future sale of any or all securities from his account at any time without notice.

Appellee's account during October of 1929 was admittedly far below marginal requirements, and, on Oc-

tober 19th, 21st and 23d, he was notified to make payments or deposit additional collateral. He states that he talked to his broker on the evening of October 23d, and promised to deliver 1,000 shares Prudential Investors to the firm the following morning. At that time, Emmons notified his broker that he could not get the additional collateral shares until noon. He did deliver some of these shares to them at about 11:45, but not in the amount promised. The market having receded continually during the day, the broker, at 12:15, sold, without notice, some shares of Emmon's stock which they held as collateral. It is conceded at the time of this sale Emmons owed $100,000, and after the sale he made settlement for that entire amount, without protest or any notice at that time that he had any claim on account of the alleged unlawful sale of stock. It was not until over two months later that he questioned the broker's action. He then sent a letter to McCreery wherein he demanded payment of his supposed loss and therein stated facts setting forth a complete cause of action for that loss.

The court below admitted this letter in its entirety and without qualification as substantive proof of plaintiff's claim. It was objected to as a self-serving declaration, and its admission is here assigned as error: Glatfelter v. Mendels, 46 Pa. Superior Ct. 562, is relied on as authority in support of its admission. This is a novel way to seek to sustain a cause of action. If such a letter is admissible without qualifications, a suitor could have his attorney send in letter form to his adversary a statement of facts, true or untrue, setting forth a complete claim, and, on receipt of an answer, have the letter admitted in evidence as substantive proof of the claim, or, in case of failure to reply, also admit the letter. See Wigmore, section 1073.

The rule that self-serving declarations, made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of

the party who made them, is established by an unbroken line of decisions: Craig v. Craig, 5 Rawle 91; Fraley v. Bishpham, 10 Pa. 320; Beach v. Wheeler, 24 Pa. 212; Cleven v. Hilberry, 116 Pa. 431; Dempsey v. Dobson, 174 Pa. 122; Kann v. Bennett, 223 Pa. 36. In Dempsey v. Dobson, supra, it was said: "The letter.......was inadmissible. It was an argumentative presentation of his view of his rights......and the grievance of which he complained." We have repeatedly held that a paragraph of a statement of claim denied in the affidavit of defense is not admissible in evidence, that the plaintiff, by competent evidence, must prove his case to sustain his statement; but here we have a letter, which, if competent according to the ruling of the court below, would step in and render the above rules meaningless. The letter was clearly a self-serving declaration and should not have been admitted. The case referred to in the Superior Court and the case on which that case relied as authority, Crossgrove v. Himmelrich, 54 Pa. 203, 208, do not sustain appellee's contention; the letters were there admitted to show demands and nothing more. The letter in the case at bar was competent only to show a demand, and it should not have been read to the jury; the mere fact of the demand alone should have been stated. See Chapin v. Cambria Iron Co., 145 Pa. 478.

Appellee was permitted to show as against the written contract that at the time he signed the power "he believed," "he was led to believe," from what was stated to him "that it was distinctly understood that they would not sell any shares of his stock without giving him plenty of notice to put up collateral." He never stated this belief to the other party. These conclusions would not only have had the effect of varying the terms of the writing, but would have entirely negatived the contract, since permission to sell without notice was the most important element in it. We have repeatedly held that in the absence of fraud, accident or mistake a contract cannot be varied by parol evidence: Crelier v.

Mackey, 243 Pa. 363, 366; Gianni v. Russell, 281 Pa. 320; First Nat. Bank of Hooversville v. Sagerson, 283 Pa. 406; and Int. Fuel Serv. Corp. v. Stearns, 304 Pa. 157. This evidence was inadmissible to vary or modify the terms of the writing, and, as the record stood without this evidence, the agreement was unimpaired unless a waiver of it was shown.

There is no doubt that an agreement of this kind may be waived by a broker either by express words or by conduct: Rosenthal v. Brown, 247 N. Y. 479; Meyer, Law of Stockbrokers and Stock Exchanges, 446, 448. The question before us is to determine what conduct will ordinarily give rise to a waiver.

It is admitted that when Emmons's marginal account was low, the stockbroker would notify him, requesting him to bring it up to condition; but a notice from a stockbroker to his client to make good his marginal account in no sense constitutes a waiver of that part of the contract which reads that the securities carried in the customer's account, pledged as collateral, may at any time be sold without notice *whenever it is deemed necessary by the brokers for their protection.* The broker may well conclude, although the customer's account is below marginal requirements, that it is not "necessary......for their protection" to sell the client's collateral. To hold that such notice would operate as a waiver of the right to sell would upset the ordinary course of business, and furnish a legal protection or excuse that would otherwise not exist and which was not contemplated in the contract. Certainly no person dealing with a broker would normally consider the receipt of notice as to deficiency in his margin a waiver of the broker's right to sell. Therefore, we hold that the demands of additional collateral or money to protect a marginal account are not of themselves waivers of a stockbroker's right to sell the customer's securities without notice if the broker's protection demands it.

Appellee does not claim his margin was sufficient to protect his account. Counsel stated in court "We don't set up a claim that defendants sold wrongfully because we were more than fully protected; our claim is based on the fact that they sold without reasonable notice to us, without giving us notice they were going to depart from their course of conduct in the past, without giving notice of the time and place of sale, and without giving us proper opportunity to protect ourselves." This appears to be the whole theory of the appellee's case and on it he must fail.

As we examine the record to ascertain just what this course of conduct was, we find it woefully deficient in showing any conduct that justifies the inference of a waiver. There was only one instance of a sale testified to. Emmons was asked whether he had been given notice whenever the sale of securities was required, and he said that he had; and when asked for specific instances he replied, "One time in 1928 and one time in 1929." It appeared that in March, 1929, he received notice that his marginal account was short and that he then gave them $10,000, but there is not a line of evidence to show that there was any sale of securities at that time. The only sale occurred in December, 1928, when McCreerys asked him to sell some securities to make good his marginal accounts. But one or two such acts over a period of three and one-half years are not sufficient to amount to a waiver of the fixed right evidenced by the written agreement. Requesting a customer to sell securities, or suggesting to him to sell securities, is not a waiver of the right to sell when the broker thinks such course necessary for his protection.

"A waiver to be effective, must be intentional; . . . . . . to construe such an act and the omission to do something further which the contract did not require into a voluntary waiver of the contract rights of the company [defendant], would be a perversion of justice": Girard Fire & Marine Ins. Co. v. Hebard, 95 Pa. 45, 51.

"Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Since intention is an operation of the mind, it should be proven and found as a fact": 40 Cyc. 261.

Appellee cites Cleveland v. Salwen, 292 Pa. 427, to sustain his theory of a waiver, but the facts of that case differ from those here noted. There, the failure to perform a covenant, when such failure was not acted on by the lessor for five years, was held to be such "extreme and continued indifference" as to waive his right to the termination or forfeiture of the contract. The lessor's acts were there held a waiver of his right to enforce strict compliance with the terms of the lease. The other cases cited by appellee failed to show the existence of a waiver. Thomas v. Boyle, 265 Pa. 487, and Rea v. The Eagle Transfer Co., 201 Pa. 273, both lease cases, held that a demand was necessary before forfeiture of a lease can be declared.

The reasoning in the following cases may be applied in the instant case: In Shilanski v. Farrell, 57 Pa. Superior Ct. 137, plaintiff purchased some lots, and agreed to pay for them in installments; the contract providing that failure to pay any installment would operate as a forfeiture. Judge RICE in his opinion in that case stated: "None of these cases sustain the contention that the mere act of receiving a payment, or several payments, after the dates when the purchaser was bound to make them, without more, operates as a complete abrogation of the explicit agreement we have quoted, or as a waiver of strict compliance with its terms, as to the amounts falling due thereafter...... The purchaser has no right to rest on such indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions." See Riddle Co. v. Taubel, 277 Pa. 95; Hopp v. Bergdoll, 285 Pa. 112, 115. These

cases stated a logical and just rule and one which when applied to the instant case works a fair and equitable result.

The judgment of the court below is reversed, and is here entered for the defendant n. o. v.