## Horton Estate.

Argued April 16, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*S. Y. Rossiter,* for appellant.

*Gerald A. McNelis,* with him *Brooks, Curtze & Silin,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 26, 1947:

John B. Horton died August 23, 1944, leaving a will dated March 10, 1944, wherein his son, Napoleon Horton, appellant, was named executor of his estate. Willie May Horton, appellee, claiming to be the widow of decedent by reason of a common law marriage, filed her election to take against the will. Napoleon Horton, as executor of the estate, filed an answer to the notice of election to take against the will, asserting that appellee was not the wife of John B. Horton and, therefore, not his widow and not entitled to her widow's election. After hearing, the court concluded that appellee was the common law wife of the decedent and sustained her election to share in the estate as decedent's widow. Two appeals have been filed: Appeal No. 3 is by Napoleon Horton, as executor, and Appeal No. 4 is by Napoleon Horton in his individual capacity.

Testimony adduced in support of the common law marriage supports the following statement of facts: In 1929, John B. Horton was operating a restaurant on West 12th Street in Erie, Pennsylvania. One Willie May Nesbitt, appellee, came to Erie from Lorraine, Ohio, and visited with relatives by the name of MacDonald at 1610 Holland Street. She visited Horton's restaurant with her relatives. Noting the absence of help, she volunteered to assist, and continued to work there for several months. During this period she returned to the Holland Street address each evening after work. Five or six months later, appellee received word that her regular employer, one Mr. Williams, for whom she was housekeeper at Lorraine, was returning. James Young, a close friend of decedent, drove the parties to Lorraine on a Saturday. On the following Sunday afternoon

Young heard decedent tell a couple by the name of Mason, friends of appellee, that she was his wife.

When the parties returned to Erie, appellee lived with decedent above his restaurant and continued to so live for the remainder of his life. For some years testator was employed as a cook at a C. C. C. camp at Kane, Pennsylvania. Appellee went with him, and real estate was purchased in their joint names as husband and wife. Subsequently, said real estate was conveyed in the same manner. Decedent named appellee as his wife and beneficiary in three life insurance policies. He introduced her to his friends and acquaintances as "Mrs. Horton, my wife." They were generally recognized in the community as husband and wife. They continued to operate the restaurant business in Erie together. There is no evidence of a prior meretricious relationship.

Appellant called only one witness, Mr. Washabaugh, the attorney who prepared the last will and testament of the decedent. He testified in substance that decedent insisted that the parties were never married, that they could not be for the reason appellee was previously married and her husband was still alive and not divorced; that he considered her a housekeeper and insisted upon a provision in his will accordingly, so that what she received under the will would be for services rendered. The will referred to appellee as "Mrs. Willie May Williams" and stated that provisions therein made for her were to be payment in full for services rendered.

The court concluded that a common law marriage had been proven and sustained the election to take against the will.

Appellant contends generally that the evidence is legally insufficient to establish a common law marriage, and specifically that: (1) the court below erred in considering testimony regarding reputation where that testimony represented the opinion of an individual, and (2) the court below erred in concluding that the testi-

mony of Washabaugh and the will were incompetent evidence.

Consideration of the assignments of error necessitates determination of the competency of the evidence complained of. Where the ultimate fact at issue is a common law marriage and there is no proof of an actual contract, evidence must be adduced from which reputation and cohabitation as husband and wife may properly be inferred. Reputation and cohabitation are facts required to be proved by the party asserting the marriage. Proof of habit of the parties, expressive of and consistent with the relation of husband and wife, is a basic requirement. In *McGrath's Estate*, 319 Pa. 309, 315, 179 A. 599, this Court said: "It is settled in this State, that, if other proof is not available, 'the marriage may be established . . . by proof of reputation and cohabitation, declarations and conduct of the parties such as the circumstances as usually accompany the marriage relation' ". The nature of evidence to prove marriage by cohabitation and reputation is considered in *Craig's Estate*, 273 Pa. 530, 534; "In considering the effect of evidence offered to prove marriage by cohabitation and reputation, it is necessary to bear in mind the following language in Bickley's App., 2 Brewst. 222: 'If a man and woman live together as husband and wife, are reputed to be such by their acquaintances, are visited and recognized by the friends of both parties, attend together places of worship or of public amusement, call each other and are called by the same name, and educate and recognize their children as legitimate,— a marriage proved to have been solemnized *in facia ecclesiœ* would not be more satisfactorily shown. . . . conduct of the parties must be such that almost any one acquainted with them would naturally infer that they bore that relation to each other' ".

General reputation of the relation or status existing between a man and woman is strong evidence in support of the ultimate fact of reputation. "The reputation must

be a consensus of opinion; . . . it is analogous to the rule laid down for reputation to moral character": *Wigmore on Evidence,* 3rd Edition, Vol. 5, section 1603. That the evidence of reputation is negative rather than positive does not render it incompetent nor deprive it of its weight and value. In *Hines's Estate,* 10 Pa. Superior Ct. 124, witnesses living in the neighborhood testified either that the parties had the reputation of being husband and wife, or that they never knew or heard anything else but that they were married. Regarding this testimony the Court said (p. 130) : "This negative testimony, coming from near neighbors and acquaintances, is entitled to about as much weight in proving the speech of the people in such a matter as positive testimony that the neighbors said they were man and wife. If two young people living as these did are not cohabiting as man and wife, and holding themselves out to the world as living in that relation, the neighbors would be very likely to speak of it."

Evidence not measuring up to the standards prescribed for "reputation", may, nevertheless, be competent evidence of certain facts. The introduction by a man of another woman as his wife, holding her out to the community in general as his wife, securing a life insurance policy on his life naming her as wife beneficiary, permitting her to be held out as his wife without objection by him, are all examples of evidence which, insufficient in itself to establish reputation, may, if proven to the satisfaction of a trial judge or jury, constitute sufficient evidence from which the fact of reputation may be determined. ". . . *conduct of the two persons,* in living together in the manner usual for married persons, is some circumstantial evidence that they exchanged consent at a prior time. . . . this evidence from conduct is commonly spoken of as *'habit':* and . . . it is something more than mere cohabitation, or living together, because it signifies living together and behaving in every way with the evident belief and

assumption that they have the rights and responsibilities of persons who have contracted a lawful marriage . . . *repute of the community* or neighborhood that these persons have been lawfully married is a kind of testimony which is based partly on the parties' habits as married persons, partly on contributions of personal knowledge by those who have witnessed the exchange of consent, and partly on the absence of contrary evidence which would naturally have come to light had it existed"; *Wigmore on Evidence,* 3rd Edition, Vol. 7, section 2083.

Carrie Mitchell testified that her brother, a friend of decedent, introduced her to appellee. "Q. How did your brother introduce you to her? A. As Mrs. Horton. Q. Was Mr. Horton there? A. I didn't see Mr. Horton." Frank Lang testified as follows: "Q. What is their relationship in the opinion of their friends and the people in the neighborhood . . . Q. What was their reputation as to reputation? A. So far as I know it was man and wife." One Rev. Ernest Smith, who had known decedent since his return from Kane in 1937, testified: "Q. Did you know a person who went by the name of Willie Mae Horton? A. I do. Q. Who was she? A. The wife of Mr. Horton, so far as I know." James Young testified: "Q. How has Mr. Horton from the time he returned from Erie with her which was about 1929 introduced and regarded himself to your knowledge with respect to Willie Mae Horton? A. It was generally accepted that he and she were married and man and wife." Exception was taken to the admission of the foregoing testimony and to the testimony of appellee.

The testimony of Lang that, so far as he knew, the reputation of the parties was that of man and wife, and the testimony of James Young, that it was generally accepted that the parties were married and man and wife, is competent reputation evidence. That Lang added the words "as far as I know" does not render the evidence incompetent. Reputation evidence always represents the opinion of an individual regarding the

reputation in issue. Reputation must mean a generally accepted fact. That Young added what the law required to be an essential element of reputation cannot affect the competency of his testimony.

Rev. Smith's testimony that he knew the person named Willie Mae Horton as the wife of Mr. Horton, is not reputation evidence. It is not, however, for that reason inadmissible. It tends to establish merely that appellee was known to him as the wife of decedent. Similarly, the testimony of Carrie Mitchell, that her brother introduced her to appellee as Mrs. Horton, tends to establish that appellee was known as the wife of decedent. Although not proper reputation evidence, the testimony was competent evidence from which the fact of reputation may be determined. A different issue would arise had appellee introduced herself as the wife of John B. Horton. Such evidence would clearly be self-serving.

The court below did not consider the testimony of Attorney Washabaugh relating to declarations of decedent made when his will was being prepared. These declarations were that there never had been a marriage, that appellee was a mere housekeeper, that she had been previously married and that disability had never been removed, and that he did not want her to share in his estate as his widow. Appellant contends that, although admittedly self-serving declarations, they are, nevertheless, admissible as part of the *res gestæ*, and as being proof of pedigree. Clearly, these declarations are not part of the *res gestæ*, nor do they fall within the rule permitting such declarations as proof of pedigree.

In *Emmons v. McCreery*, 307 Pa. 62, 66, 160 A. 722, this Court said: "The rule that self-serving declarations, made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of the party who made them, is established by an unbroken line of decisions." In the instant case, appellant stands in the place of the party who made the declaration. The court properly held that the

evidence was inadmissible. *Greenawalt v. McEnelley,* 85 Pa. 352, 355, is relied upon by appellant as authority for admitting these self-serving declarations. In that case, the court below instructed the jury that the admissions of the fact of marriage were admissions against interest and that "Denial by him of the marriage would, however, be declarations in his own interest, and are entitled to but little weight in opposition to admissions against his interest." Regarding said instruction, this Court said (p. 356) : "The portion of this ruling that was especially criticized was the statement that the admission by Benjamin Guffey of the fact of his marriage was against his interest. If we concede that proposition the remainder of the paragraph is free from objection." Mr. Justice PAXSON, speaking for the Court, proceeded to state that the declarations of marriage were admissions against interests. It does not appear from the report of this case whether these denials of marriage were made in the presence of the putative wife. If they were, the case is inapposite. If they were not, then we do not approve of the language used. In that case, as here, there was abundant proof of the existence of a common law marriage. To permit the relaxation against the rule of admissibility of self-serving declarations in cases involving common law marriages, would enable one who has undertaken legal obligations concomitant with the marriage relation to cast these obligations and duties aside at will, tend to undermine and destroy the morals of our society, a not inconsiderable part of which is based upon relationships arising by virtue of marriages entered into without the solemnity of a license and marriage certificate, and would impose the stigma of illegitimacy upon children born of such marriage.

What has been said with regard to the testimony of Attorney Washabaugh is equally applicable to the self-serving declarations stated in the will itself.

Decree affirmed, costs to be paid by Napoleon Horton, appellant in Appeal No. 4.