## Kestler v. Westinghouse Electric Corporation

*Edward F. Muller, Jr.*, for plaintiff.
*Edward F. Cantlin*, for defendant.

SWENEY, P. J., April 6, 1965.—This action in assumpsit was tried before a judge and jury, resulted in a verdict for plaintiff and we now have before the court en banc defendant's motions for a new trial and for judgment non obstante veredicto for disposition.

The agreed facts are that plaintiff was employed by defendant for 16 years, from March 1, 1945, to April 17, 1961. The contract of employment provided that employes of defendant corporation, laid off through no fault of their own and having completed three years of service or more, are entitled to be paid by defendant up to a sum equal to one week's wages for each year of employment. That portion of the contract relating to lay-off benefits contains four options of benefits available to laid-off employes.

Option no. 2 provides for a lump sum payment in full within 60 days after lay-off, provided the company is of the opinion that the lay-off will last six months and the employe decides voluntarily to forego service credits, recall and other rights; an employe, who has elected option no. 2, in his discretion to retire, may elect to repay the lump sum payment and may be reinstated to his service credits, recall and other rights. Also contemplated by the terms of the lay-off benefit agree-

ment is the right of the employe to receive State unemployment compensation in addition.

At the trial, plaintiff offered testimony that, in April of 1961, prior to the termination of his employment, he was employed as a service salesman at $170.40 per week; in April of 1961, he was laid off because of a reduction in the work force; his work had been acceptable and his discharge or lay-off was not due to his failure to perform his job in a satisfactory manner or for any wrong doing or fault of any type on his part.

In defense, defendant offered testimony that plaintiff terminated his employment as a result of his own voluntary act and such termination was not due to any lack of work occasioned by reasons associated with the business. There was some testimony, which, if believed, would indicate that plaintiff's work was not satisfactory. But, defendant also offered testimony that plaintiff had been offered two other jobs at a substantial cut in salary, which plaintiff refused to accept.

The vital question in this case is whether or not plaintiff's rights under the lay-off agreement are nullified when and if defendant offers plaintiff another position, comparable or not with the position he then holds.

In his charge, the trial judge specifically charged the jury that plaintiff did not have to accept other jobs offered to him by defendant in order to be eligible for benefits. He refused defendant's request to charge that, even if plaintiff was relieved of his duties as a salesman because of a cut-back, before awarding him damages they must also find that defendant did not offer him other employment of any type and that if plaintiff was offered any job he was capable of performing, regardless of the rate of pay and nature of the work, his refusal to accept such jobs disqualified him from receiving lay-off benefits.

The testimony must be read in the light most favorable to the verdict winner: Sweigert v. Mazer, 410 Pa. 71; Bailey v. Gibbs, 414 Pa. 238. The question as to whether plaintiff had been discharged for cause having been resolved in favor of plaintiff, the single issue is whether or not the trial judge erred in construing the contract of employment. The testimony created a factual issue on this point; plaintiff contended that no jobs were actually offered to him and defendant asserted that a specific job at a specific salary was offered to him and rejected because of a substantial reduction in salary. Since the statute authorizing the granting of judgment n. o. v. was not intended to authorize the court to invade the province of the jury, it is well settled that, if the evidence on a material point presented an issue of fact for the jury, judgment n. o. v. is improper: Miller v. Keyser, 410 Pa. 157; Allentown Supply Corporation v. Stryer, 202 Pa. Superior Ct. 78.

A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. Also, in construing contracts the parties must be held to have used ordinary words in their ordinary and accepted meaning. Where the words are equivocal, they must be construed against the person preparing the document: Provident Trust Company v. Equitable Life Assurance Society, 316 Pa. 121; Betterman v. American Stores Company, 367 Pa. 193.

We interpret the lay-off plan to have the obvious intent of protecting the wage earner from a cessation of income brought about by circumstances beyond his control and without his fault. The plan is designed to protect income and not to provide job security. This, however, is not the sole reason for the plan. This plan also provides certain benefits for laid-off employes in lieu of the right to recall or other rights arising by way of the contract of employment. Nowhere in the

contract do we find an intent to condition these benefits upon the ability of the company to offer substitute or other employment to the laid-off employe. To the contrary, we find a clear statement of an intent to pay certain benefits outright to the employe upon the termination of his job due to reductions in the work force which, in the opinion of the company, will last at least six months. We find no language which gives the right to Westinghouse to discontinue a classified job and compel the jobholder to accept any job which may be offered.

The ruling of the New York court, interpreting this same contract, and urged upon us by defendant as controlling, cannot be accepted by us. To us, the ruling in this case renders meaningless option no. 2 of the contract. The logical conclusion which may be reached by the New York ruling is that an employe with 30 years service at a weekly salary of $300, may be compelled to accept a menial job at a salary of $50 per week, with no rights in his favor under the employment contract.

We call especial attention to the words, "an employe who is laid off through no fault of his own." The word "fault" implies wrongdoing or breach of duty or obligation. We cannot conclude that refusal to take a lower paying job is a misdeed, transgression or wrongdoing. The use of the word "fault" discloses an intent to provide benefits to an employe, to whom the employer is unable to demonstrate wrongdoing, neglect or incompetency, but who is removed from the payroll by economics or cut backs.

We agree with the trial judge that evidence of how the plan is presently administered is not admissible. The question before this court is the intent of the parties at the time of employment. Declarations which are favorable to the person making them, made in the absence of the other party and not coming within some

recognized exception to the hearsay rule nor offered to rebut evidence of want of credibility, are not admissible on behalf of the person making them: Emmons v. McCreery, 307 Pa. 62, 66.

Defendant, in its argument, mentions the rejection of the offer of equivalent employment as a waiver of the rights to benefits under the lay-off plan. The testimony does not disclose that plaintiff was offered equivalent employment, but rather, at best, jobs which would compel plaintiff to take substantial pay cuts. This much is evident—if the defendant's argument is valid, plaintiff must accept a job at any salary offered. We cannot so interpret the contract before us.

### DECREE

And now, April 6, 1965, it is ordered and decreed that:

1. Defendant's motion for judgment non obstante veredicto is refused;

2. Defendant's motion for a new trial is denied;

3. Judgment is hereby entered in favor of plaintiff and against defendant upon the verdict of the jury together with interest at six percentum per annum from the date of the verdict;

4. An exception is noted for defendant.