**England Estate**

*Richard D. Walker*, for respondents.

*Harold Tull*, for exceptant, Kinkora Pythian Home Association, Inc.

SWOPE, P. J., June 10, 1971.—Exceptions have been filed by the Kinkora Pythian Home Association, Inc., to the first and partial account of Dorothy Leidich, Administratrix of the Estate of Beulah England, deceased, who died, intestate, November 15, 1964, a resident of the City of Harrisburg, Dauphin County, Pa., survived by C. Raymond England, husband, Dorothy M. Leidich, daughter, and Alexander Holmes, son. C. Raymond England, having survived his wife, himself died in May 1965, a resident of Kinkora Pythian Home, Covallen, Perry County, Pa.

The instant estate has been raised to dispose of an inheritance received by the late Beulah England from the Estate of Flora Taylor, a sister, who died testate, November 10, 1964, a resident of the State of Texas. The first and partial account excepted to herein proposes a division of that inheritance equally between Alexander Holmes and Dorothy Leidich as per an as-

signment of the dower interest of C. Raymond England, allegedly made by him during his lifetime, on November 19, 1964. The exceptant, though admitting the execution and delivery of the above assignment, contends that the date affixed thereto is false and fraudulent and should, in fact, have been January 31, 1965, and that it must be taken, therefore, as being superseded by a written assignment of that same interest made by C. Raymond England to the Kinkora Pythian Home, dated December 23, 1964. We are now required to determine the priorities of the above assignments and their relationship to the claim of each of the parties as distributees of the assets of the subject estate.

At the hearing, considerable testimony was allowed over objection, the admissibility of which must now be determined. To be considered initially is the testimony of John H. Hankle, the secretary of the board of the exceptant association, and Daniel Webster Lehman, Grand Chancellor of the Knights of Pythias of Pennsylvania, both of whom testified as to circumstances surrounding an alleged application of the deceased, C. Raymond England, for admittance to the Kinkora Pythian Home, and an assignment by him of his assets to the home as a condition of his acceptance for residence purposes. The testimony was objected to by respondents on the grounds that its admission would constitute a violation of the Dead Man's Act of May 23, 1887, P. L. 158, 28 PS §322, rendering incompetent, as to any matter occurring before the death of decedent, testimony of a witness where: (1) the deceased had an actual interest or right in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness, not simply the testimony, is adverse to the deceased; and (3) a right of the deceased has passed to a party of record who repre-

sents the deceased's interest: Hendrickson Estate, 388 Pa. 39, 45, 130 A. 2d 143 (1957). A party rendered incompetent under the above rule may not testify as to any declaration, admission, conversation or act of the deceased or of himself in the presence of the deceased before the death of decedent, not even to a conversation between the parties to the suit with reference to decedent's rights: 5 Standard Pa. Practice (revised) § 123, at 286.

In the instant case, both parties claim the same asset under different assignments from the deceased. The fact that the Kinkora Pythian Home Association is a surviving party to one of the alleged assignments is insufficient, of itself, to disqualify its representatives as witnesses under the "Dead Man's Act." "It must further appear that the rights of the deceased have passed to the other party on the record who represents his interest: Wolfe v. Scott, 275 Pa. 343, 346, 119 A. 468, 469 (1923). See also 2 Henry, Pennsylvania Evidence, §774, p. 219 (4th Ed. 1953), and cases cited therein": Grasso v. John Hancock Mutual Life Insurance Company, 206 Pa. Superior Ct. 562, 565, 214 A. 2d 261 (1965).

Under Pennsylvania law assignees have long been considered persons to whom the deceased assignor of a thing or contract has passed, by his own action or by law, his right therein: Hess v. Gourley, 89 Pa. 195 (1879); Porter v. The National Bank of Boyertown, 32 Berks Co. 229 (1939). In the present case, however, both parties assert their status as assignees, and claim to be bona fide representatives of the deceased, seeking to exclude the other with reference to its alleged assignment, as adverse to the interest of the deceased. The Pennsylvania Supreme Court has summarized the law with regard to such a dilemma in Ford Estate, 431 Pa. 185 (1968), stating at page 187:

"As framed by the trial court the issue presented can be thus stated: 'A problem has always existed in the application of this statute [Dead Man's Act] to controversies between an estate and one who claims property originally owned by the decedent but allegedly the subject of an inter vivos transfer to such person. The difficulty stems from the fact that there are, in such a situation, two parties with a possible interest in the property, each of whom might have an interest adverse to that of the decedent, depending on whether the transfer is valid or not, which is, however, the *ultimate* issue. This Gordian knot is cut by determining whether the gift or transfer is *prima facie* valid; with this determined, it becomes possible to decide to whom the decedent's interest has passed, and the other party to the controversy is rendered incompetent.' "

Respondents, at the outset of the present proceedings, introduced a written assignment signed by decedent and bearing the date November 19, 1964. The assignment, so introduced, displaying no discrepancy or ambiguity on its face, and antedating the other assignment on the record, established a prima facie case, and, in keeping with the above cited decisions, the interest of the deceased must be said to have passed to respondents herein. Consequently, the testimony of exceptant, as a surviving party to an alleged transaction with the deceased, C. Raymond England, having an adverse interest to that of decedent, is inadmissible in that it refers to matters occurring before the death of decedent, and, accordingly, will not be considered in our determination of this case.

Counsel for respondents objected also to testimony by G. Thomas Miller, Esq., counsel for C. Raymond England, as to alleged conversations with his client which was offered by exceptant to show that the assignment to respondents "was executed subsequent

to the date that appears in the document." In other words, the above testimony was offered in proof of the matter asserted by exceptant. Though the witness is not an interested party within the meaning of the Act of May 23, 1887, the testimony of Mr. Miller is rendered inadmissible as violative of the hearsay rule.

Hearsay evidence is defined as "an extrajudicial utterance offered to prove the truth of the matter asserted" and is not rendered competent merely by the fact that the declarant is dead: Meacham v. Pennsylvania Railroad Co., 38 Dauph. Rep. 248 (1933). Furthermore, when a witness offers evidence of assertions made by a party to an action, before suit is brought, and which are self-serving, such testimony is clearly inadmissible as hearsay. In Emmons v. McCreery, 307 Pa. 62 (1932), at pages 66-7, the following language occurs in this regard:

"The rule that self-serving declarations, made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of the party who made them, is established by an unbroken line of decisions. [Citations omitted] In Dempsey v. Dobson, supra., [174 Pa. 122, 34 A. 416 (1896)] it was said: 'The letter . . . was inadmissible. It was an argumentative presentation of his view of his rights . . . and the grievance of which he complained.' "

The death of the declarant does not render his self-serving declarations admissible, except in those jurisdictions where the rule governing the matter under consideration has been changed by statute: 31A CJS §216, at page 592. Since this rule has not been modified in Pennsylvania, the testimony of remarks of the deceased declarant to Mr. Miller must be excluded as representing merely a restatement of portions of the complaint and self-serving in nature.

A final exception by respondents is noted on the

record to the admission, over objection, of various letters written by Mr. Miller to officers of the Kinkora Pythian Home Association and its attorney, Robert Frankel. The letters contain evidence of the same assertions offered by Mr. Miller in his oral testimony and, being attempts to prove the same facts, must be excluded under the same general hearsay rules. Further, the Summary of Pennsylvania Jurisprudence, Evidence, §222, at page 218, states:

"Generally, correspondence of persons, where offered as evidence of the facts stated therein must be excluded under the general principle respecting res inter alios acta (Crousillat v. Ball, (1803) 4 Dall 294, 1 L ed 840, 3 Yeates 375 2 Am. Dec. 375), unless the party against whom the communications are tendered is in some way connected therewith or knew and approved their utterance. Harris v. Tyson (1855) 24 Pa. 347, 64 Am. Dec. 661."

There has been no showing of connection with, nor knowledge and approval of, the respondents with regard to the offered letters. It should be noted that even letters sent to an adversary party as restatements of a claim, have been held inadmissible to prove the facts therein asserted.

"If such a letter is admissible without qualifications, a suitor could have his attorney send in letter form to his adversary a statement of facts, true or untrue, setting forth a complete claim, and, on receipt of an answer, have the letter admitted in evidence as substantive proof of the claim, or, in the case of failure to reply, also admit the letter": Emmons v. McCreery, supra, p. 66.

Such evidence violates the general rule of law that a claim be proved by statements of a witness reflecting his own knowledge and not what he has heard from others: Summary of Pennsylvania Jurisprudence, Evi-

dence, §101, at page 111. The letters written by Mr. Miller, restating the claim of the deceased are, therefore, inadmissible for the purpose of proving the facts asserted by them.

Following denial of the exceptant's motion for non-suit, and testimony by respondent, Dorothy M. Leidich, counsel for respondents presented witnesses who testified as to the remarks of the deceased assignor shortly after the funeral of his wife, Beulah England. In these statements, he allegedly renounced any claim to a portion of the estate of his deceased wife, asserting that the assets thereof belonged to his son and daughter, respondents in the instant action, and that he would take steps to transfer his share to them. This testimony was objected to by the exceptant as hearsay, which objection was, we feel, properly overruled. The rule excluding hearsay evidence does not apply to declarations of persons, subsequently deceased, against their pecuniary interest: Taylor v. Gould, 57 Pa. 152, 156 (1868). Such declarations are admitted "on 'the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus officially sanctioned, though oath and cross-examination are wanting': Wigmore on Evidence, Vol. 3 (2d ed.) sec. 1457, p. 191": Rudisill v. Cordes, 333 Pa. 544, 549, 5 A.2d 217, 219, (1939). Whether or not a declaration is against interest is judged with regard to the position of the declarant at the time of the statement: 31A CJS §217, at 603. The fact that the declarant, as in the instant case, allegedly sought to undo his remarks in a later action, will not obviate their admissibility. Evidence of declarations of the decedent as to his disinterest in the assets of his wife's estate and his intent to transfer the same to his children was, therefore, properly admitted.

Having dealt with counsel's objections above, the following facts appear from the record:

After the death of his wife, Beulah England, C. Raymond England, decedent in the instant case, expressed to his friends and neighbors his disinterest in any inheritance from his wife, and a desire that said inheritance go to his children, the respondents in this action. At the time decedent made these declarations, he was aware of his right, through his wife, to a portion of the estate of Flora Taylor. With this understanding, decedent executed a written assignment of his interest in the estate of his wife, including the expectancy under the last will and testament of Flora Taylor, on November 19, 1964, in the presence of respondents and their counsel. On November 23, 1964, decedent stated to a family friend that he had made the above assignment. Before his admission into the Kinkora Pythian Home, decedent once again disclaimed, to acquaintances, any interest in the property of Beulah England.

Further, it is agreed by both parties, that on December 23, 1967, decedent completed an application for admission to the Kinkora Pythian Home. In that application, in answer to the question, "Has the applicant any property in expectancy?", decedent replied, "No."

The above facts are uncontroverted by any competent evidence that the assignment, executed in the presence of respondents,was misdated or has been subsequently fraudulently backdated in order to appear prior in time (as to its execution) to the assignment by decedent of his assets to the Kinkora Pythian Home.

With regard to the testimony of friends of C. Raymond England as to decedent's disclaiming remarks, it should be noted that evidence of the mere admission by the donor of a transfer, or declaration on his part of an intent to do so, are not necessarily sufficient [to show the transfer complete]: Kaufmann's Estate, 281

Pa. 519, 520, 127 Atl. 133, (1924). But, this evidence, combined with the admitting and proof of a written assignment places respondents, in this action, on firm ground, indeed. It is the burden of the party alleging that an assignment is fraudulent to prove that fact: 3 P. L. E. §96, at page 209. It is our opinion that the exceptant, for reasons as stated above, has not met this burden.

Accordingly, we make the following

## ORDER

And now, June 10, 1971, the within exceptions are hereby dismissed.

And now, to wit, December 28, 1971, the record of this case shows that the first and partial account of Dorothy Leidich, administratrix of the estate of Beulah England, deceased, has been advertised in accordance with law. Notice has been given to all parties in interest and the exceptions filed thereto have been either disposed of by this court per its opinion and order dated June 10, 1971, or withdrawn. Subsequent to the presentation of the first and partial account for audit, the accountant discovered that it was unnecessary for her to retain for future accounting certain assets of this estate and, therefore, submitted to this court a supplement to the first and partial account in which she suggested distribution of the entire balance equally between Alexander Holmes and Dorothy Leidich, thereby rendering the account a first and final account. Said supplement, which will serve as the basis for our order of distribution, is hereby directed to be filed.

Decedent, a married woman, died on November 15, 1964, intestate, leaving as her heirs, under the intestate laws of this Commonwealth, her husband, C. Raymond England, and two children, namely, Alexan-

der Holmes and Dorothy Leidich. Testatrix' surviving spouse, C. Raymond England, died in May of 1965; however, during his lifetime, to wit, on November 19, 1964, C. Raymond England assigned, transferred and conveyed all of his right, title and interest in the Estate of Beulah England, deceased, to Dorothy Leidich and Alexander Holmes.

All debts, inheritance taxes and costs of administration have been paid. The account as filed shows a balance of $44,312.60 for distribution. Upon final confirmation hereof, we direct the accountant to distribute said balance as set forth in the following

SCHEDULE OF DISTRIBUTION

| Balance to be distributed: | $44,312.60 |
| --- | --- |
| TO: | |
| Alexander Holmes, ½ | $22,156.30 |
| Dorothy Leidich, ½ | 22,156.30 |
| | $44,312.60 |

The account is hereby confirmed nisi, and in the absence of exceptions duly filed within 10 days herefrom, such confirmation shall be and become absolute, as of course.