Bednorzenski, Appellant, *v.* Schrager et al.

Argued October 27, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*E. Herman Fuiman,* for appellant.

*Henry S. Ambler,* with him *Frank R. Ambler* and
*Harry S. Ambler, Jr.,* for appellee.

OPINION BY KELLER, P. J., January 29, 1937:

The plaintiff, Bednorzenski, sustained damages in a
collision between his automobile and an automobile
owned and driven by the defendant, Schrager. The
latter was insured as to personal liability and property
damage resulting from the operation of his car by the
appellee, Yorkshire Indemnity Company. Bednorzen-
ski brought an action of trespass against Schrager and

recovered a judgment for $900. An attorney employed by Yorkshire Indemnity Company had appeared for Schrager in the trespass action, but on the day of trial withdrew his appearance, and the action was not defended, resulting in a verdict for the plaintiff, on which judgment was entered as above stated. The plaintiff, thereupon, issued a writ of attachment in execution, and summoned the Yorkshire Indemnity Company, as garnishee, under the provisions of the policy.

The garnishee insurance company denied liability under its policy, because it averred that Schrager, the insured defendant, had violated the terms and conditions of the insurance contract, in that he had failed to render the cooperation and assistance due and requested by the company in the defense of said action, and, specifically, had failed to appear and testify on the trial of said action on October 5, 1934, although he had been notified the day before to be present in court at ten o'clock A. M. of the next day, when the case would be called for trial. Counsel employed by the insurance company to represent the defendant in the trespass action, testified on the trial of the attachment in support of the garnishee's denial of liability, and gave evidence, which if believed, would justify a verdict for the garnishee.

Schrager, called as a witness in rebuttal by plaintiff, testified that he had been in court all day on October 4, 1934, prepared to testify in the trespass action, and when the case was not called for trial that day he had been informed by counsel representing him, as aforesaid, that there was not a chance that the case would be reached the next day, (Friday), as there would be only half a day left for the trial of cases; that he was not told to come back to court the next day, and in consequence went to New York, where he had business. He denied having refused to cooperate with or assist the insurance company in the defense of said action and

said he had been in court a number of times and whenever directed so to be by the company's counsel representing him; and that he knew nothing about the trial on October 5, 1934, or the verdict rendered against him, after the withdrawal of counsel representing him, until October 10, 1934, when he received a letter from said counsel, dated October 5, 1934, informing him of the result and disclaiming liability by the company.

The liability of the garnishee insurance company under the policy and its liability to the plaintiff in the attachment execution depended on how the jury, the triers of fact, would resolve the dispute of fact between the parties; whether they would believe the witnesses for the garnishee—the counsel employed by it to represent the defendant, Schrager—on the one hand, or Schrager himself, testifying as a witness for the plaintiff, on the other; and this question of fact should have been submitted to the jury with the scales not weighted by incompetent evidence.

It was not competent for the garnishee, after the event, that is, after the trial of the trespass action, to make evidence for itself by writing a letter to Schrager setting forth in detail the matters upon which it relies to escape liability under the policy. Such a letter was a self-serving declaration not admissible in evidence, in the circumstances here present, in an action on the policy by the insured or in an attachment execution by the plaintiff standing in the insured's shoes. The fact of the garnishee's denial of liability, by letter dated October 5, 1934, and received by the insured on October 10, 1934, was admissible, but the letter itself going into minute details in support of that denial, was not admissible as substantive evidence of the matters of defense recited in it. It is similar in principle to proofs of loss or proofs of death furnished by the insured, or beneficiary, under a policy of insurance, which, although received in evidence for the limited purpose of showing

compliance with the requirements of the policy, are not admissible as substantive evidence on behalf of the person furnishing them, of the matters set forth therein, and should not be read or given to the jury.

The point was squarely ruled by the Supreme Court in *Emmons v. McCreery*, 307 Pa. 62, 66, 160 A. 722, where a judgment for plaintiff in an action of trespass for conversion of securities was reversed and a new trial granted because the plaintiff had been allowed to introduce a letter from plaintiff to defendant, after the occurrence of the facts alleged to constitute the conversion, setting forth those facts, the letter having never been answered. The present Chief Justice, in pointing out the inadmissibility of the letter, said (pp. 66-67): "The court below admitted this letter in its entirety and without qualification as substantive proof of the plaintiff's claim. It was objected to as a self-serving declaration, and its admission is here assigned as error. *Glatfelter v. Mendels*, 46 Pa. Superior Ct. 562, is relied on as authority in support of its admission. This is a novel way to seek to sustain a cause of action. If such a letter is admissible without qualifications, a suitor could have his attorney send in letter form to his adversary a statement of facts, true or untrue, setting forth a complete claim, and, on receipt of an answer, have the letter admitted in evidence as substantive proof of the claim, or, in case of failure to reply, also admit the letter. See Wigmore, section 1073. The rule that self-serving declarations, made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of the party who made them, is established by an unbroken line of decisions; *Craig v. Craig*, 5 Rawle 91; *Fraley v. Bispham*, 10 Pa. 320; *Beach v. Wheeler*, 24 Pa. 212; *Cleven v. Hilberry*, 116 Pa. 431; *Dempsey v. Dobson*, 174 Pa. 122; *Kann v. Bennett*, 223 Pa. 36......The letter in the case at bar was competent only to show a de-

mand, and it should not have been read to the jury; the mere fact of the demand alone should have been stated. See *Chapin v. Cambria Iron Co.,* 145 Pa. 478." In the *Emmons v. McCreery* case, as in this, the person to whom the letter was sent made no reply to it, but that did not make the letter substantive evidence of its contents. The courts of this State have not given the failure to reply to a written communication the effect as a tacit admission of the allegations of fact contained in it that is frequently ascribed to a failure to deny an oral face-to-face charge, accusation or assertion of fact by another: *Fraley v. Bispham,* 10 Pa. 320; *Dempsey v. Dobson,* 174 Pa. 122, 34 A. 459; *Kann v. Bennett,* 223 Pa. 36, 46, 72 A. 342; *Barrow v. Newton,* 55 Pa. Superior Ct. 387.

The point is discussed in Wigmore on Evidence, Vol. 2 (2d Edition) as follows: *" 'Qui tacet consentire videtur,'* 'silence gives consent,' are ancient maxims, which have ever been taken to be unquestioned and have a larger scope than their application in the law of evidence. But, like all maxims, they merely sum up a broad principle, and cannot serve, without decided qualification, as practical and precise rules. Silence implies assent to the correctness of a communication, but on certain conditions only. The general principle of Relevancy (*ante.* sec. 29) tells us that the inference of assent may safely be made only when no other explanation is equally consistent with silence; and there is always another such explanation—namely, ignorance, or dissent—unless the circumstances are such that a dissent would in ordinary experience have been expressed if the communication had not been correct. This much has always been conceded judicially when the question has been presented, (Sec. 1071, p. 553— relating to oral statements) . . . . . . *The failure to reply* to a *written communication* may sometimes suffice to permit an inference of the party's assent to the correct-

ness of the statements made therein (upon the general principle of sec. 1071, *ante*). But the inference is not ordinarily so strong; and judges have always pointed out that the failure to reply in writing to a written communication does not have the same significance as a failure to reply orally to an oral communication:...... So far as any definite rule is concerned, then, it seems impracticable; and the precedents indicate that each case must stand on its own facts. (Sec. 1073, p. 567)."

In the present case, Schrager's explanation was entirely plausible. It was that when the letter was received the case was over and there was nothing that he could do about it. In such circumstances, a neglect to send a denial in reply did not amount to a tacit admission of the truth of the matters contained in the letter, and it should not have been received in evidence, generally, nor read to the jury.

The letter in question was not only admitted in evidence generally and read to the jury; it was also sent out with the jury as an exhibit, when they retired for consultation, and the court in its charge specifically referred to it and laid much emphasis upon it. There can be no question that this was harmful to the plaintiff.

The first assignment of error is sustained; the judgment for the garnishee is reversed and a new trial is awarded.