**In the Matter of Roy A. LUCKENBILL and Bessie M. Luckenbill, individually and jointly, Bankrupt Debtors.**

No. 24977.

United States District Court
E. D. Pennsylvania.

Nov. 13, 1957.

Emmanuel Weiss, Reading, Pa., for claimant.

Ellis Brodstein, Reading, Pa., for trustee.

EGAN, District Judge.

This matter is here on petition for review of a Referee's order dismissing a reclamation petition and assessing the costs on the petitioner.

It involves the construction of certain provisions of the Pennsylvania Uniform Commercial Code relating to filing.

The question is appropriately stated by petitioner as follows: "Does a Trustee in Bankruptcy, ipso facto, acquire a lien which is superior to an Installment Seller who did not strictly comply with the filing requirements, even though there are no creditors in existence under the State law who could contest the validity of the lien?"

At the time of their voluntary bankruptcy and for some time prior thereto, the bankrupts were in the butcher business and conducted a retail grocery store in Berks County, Pennsylvania. They had two places of business in that County, one a butcher shop at Bernville, and the other a retail grocery store at Robesonia.

Several months prior to their adjudication, in two separate transactions dated July 29, 1955 and November 9, 1955, respectively, the bankrupts purchased from United Butcher & Grocery Equipment Company, the reclamation petitioner, certain equipment for their stores under two separate installment sales contracts, each of which included a note for the full price, payable in installments. The notes and contracts were almost immediately assigned for value, with recourse, to a Reading bank by the reclamation petitioner, which became the holder thereof. The earlier contract was signed by both bankrupts and the other was signed by only one. No significance is attached to this by the parties.

Thereafter, the bankrupts as vendees made installment payments direct to the Bank. At the time of the bankruptcy,

substantial balances were payable by the bankrupts on both contracts and they were in default of the terms thereof to the Bank. Meanwhile, the reclamation petitioner has been making interest payments to the Bank but the latter has not exercised its right of recourse.

Shortly after the two installment sales contracts were executed and delivered by the bankrupts to the reclamation petitioner, copies thereof were separately filed in the office of the Prothonotary of Berks County, Pennsylvania, on August 19, 1955 and November 14, 1955, respectively, as secured transactions, under the Pennsylvania Uniform Commercial Code.[1]

Copies were filed for the first time with the Secretary of the Commonwealth on *March 18, 1957*. In the meantime, the bankrupts had filed their voluntary petition and had been adjudicated bankrupts on February 14, 1957, and Referee Hiller had held a first meeting of creditors on March 15, 1957, at which a trustee was elected.

To the reclamation petition the trustee filed an answer and supplemental answer resisting the petition on two grounds, namely, that the petitioner had failed to perfect his alleged security interest in the goods, and that the Bank to which the contracts were assigned, and not the reclamation petitioner, was the real party in interest and that the reclamation petitioner had no standing.[2]

At the argument, the second question referred to was practically abandoned in order to have a determination of the more fundamental one relating to the validity of the alleged security interest of the petitioner in the goods sought to be reclaimed.

The trustee contends that in order to perfect a security interest in the goods, it was necessary, under the facts of this case, that a financing statement, or a copy of the security agreement, be filed as a secured transaction, both in the office of the Secretary of the Commonwealth at Harrisburg, and in the office of the Prothonotary of Berks County where the debtors had their places of business; that petitioner's claim to the goods is subordinated to the trustee's lien by reason of the filing of the security agreements at Harrisburg *after* bankruptcy had intervened and the trustee's lien had attached.

Under the express terms of the installment sales contracts, the interest reserved in the goods by petitioner was designated "* * * a security interest * * * pursuant to the Pennsylvania Uniform Commercial Code."

The parties agree that the goods covered by the two installment sales contracts are "equipment" as defined in the Code. UCC, Section 9–109.[3]

The Code (Section 9–302) requires the filing of a financing statement, or a copy of the contract, to perfect all security interests with certain exceptions not here applicable; that if filing is required to perfect a security interest and the collateral is "equipment," the place of filing is in the office of the Secretary of the Commonwealth *and in addition if all the debtor's places of business are in a single county, in the office of the prothonotary of that county* [Section 9–401(1)]; that if filing is required, a security interest is perfected at the time of filing [Section 9–303(1)]; that an unperfected security interest is subordinate to the rights of a lien creditor who becomes such without knowledge of the

1. Act of April 6, 1953, P.L. 3, Section 4–101, Purdon's Pa.Stat.Anno., tit. 12A, Section 4–101. Hereafter referred to as UCC.

2. There is authority for the proposition that an assignment of a chose in action constitutes the assignee the proper party in interest under Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

Heitzmann v. Willys-Overland Motors, D.C.E.D.N.Y.1946, 68 F.Supp. 873.

3. The pertinent provision of the Code is as follows:
"Goods are
&ast; &ast; &ast; &ast; &ast;
"(2) 'equipment' if they are used or bought for use primarily in business &ast; &ast; &ast;".

secured interest and before it is perfected [Section 9–301(1) (c)]; that a trustee in bankruptcy is a "lien creditor" as defined by the Code from the date the petition in bankruptcy is filed [Section 9–301(3)].

The fact that the reclamation petitioner did not file his security agreements in the office of the Secretary of the Commonwealth until after the first meeting of creditors had been held and a trustee elected and after he had both notice and knowledge of the bankruptcy is not disputed. It follows, therefore, that the security interests of the reclamation petitioner were unperfected at the time of the bankruptcy and they were subordinated to the rights of the trustee as a "lien creditor."

The same would hold true under Section 70, sub. c, of the Bankruptcy Act.[4]

Reclamation petitioner seeks to escape from the dilemma in which he finds himself by relying on Section 9–401(2) of the Code which reads:

> "A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing was proper and with regard to all collateral against any person who has knowledge of the filing of the financing statement which indicates that a security interest in all collateral wherever located was intended."

He urges that such partial filing as was accomplished prior to bankruptcy was made "in good faith" and that it constituted notice to the trustee and all other creditors of the bankrupts and was constructive "knowledge of the filing of a financing statement which indicated that a security interest in all collateral wherever located was intended."

While the language of this Section is not as clear as it might be, it is evident that petitioner's construction would nullify Section 9–401(1) which is the primary statutory provision governing where filing shall take place. Furthermore, as Referee Hiller well points out:

> "This is unsound reasoning. It ignores at the outset the distinction between notice and knowledge. There is no showing anywhere that the trustee had knowledge as of the date of bankruptcy or as of the date of his election on March 15, 1957 of any filing whatsoever by the petitioner. It is difficult to understand moreover what the petitioner and the Code mean by a filing which is made 'in good faith' in an improper place or not in all of the places required by the Code. One may ask, under what circumstances is a filing not made 'in good faith'? Conceivably petitioner's filing after bankruptcy, with knowledge of the bankruptcy, could have been a filing not made in good faith. We think it fairly certain and sound that a failure to comply with the filing requirements of the Code cannot be excused by a mere showing of good faith on the part of the party whose omission brought him to grief."

The case of In re Consorto Construction Co., 3 Cir., 212 F.2d 676, 679, decided by the Third Circuit in 1954, does not help the petitioner. There the chattel mortgage was properly recorded before bankruptcy and for that reason alone the lien creditor's rights became superior to those of the trustee in bankruptcy. The trustee's rights, based on Section 70, sub. c of the Bankruptcy Act, are the rights of a hypothetical lien creditor whose lien accrues only on the date of bankruptcy "whether or not such a creditor actually exists." As Judge

4. 11 U.S.C. § 110, sub. c. The pertinent provision of Section 70, sub. c, of the Bankruptcy Act reads:

"* * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankrutcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Hastie points out, the mortgage was properly recorded before bankruptcy and therefore "anyone subsequently obtaining an interest in or claim against the property was subordinated to the lien." For that reason alone the chattel mortgagee properly prevailed over the trustee.

The order of the Referee denying the reclamation petition is affirmed.