**E. C. OTTINGER, Appellant,**

v.

**R. H. SIEGFRIED, Appellee.**

**No. 7928.**

United States Court of Appeals
Tenth Circuit.

July 26, 1965.

Rehearing Denied Aug. 30, 1965.

Sam J. Day, of Brown, Day & Crowley, Fort Worth, Tex., for appellant.

Harry D. Moreland, of Doerner, Stuart, Moreland & Saunders, Tulsa, Okl. (Pat Malloy, Tulsa, Okl., on brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

MURRAH, Chief Judge.

On this appeal from a judgment on a jury verdict appellant-Ottinger complains of the exclusion of competent evidence which he says vitally affected the course of this litigation.

The background facts are that Ottinger and his business entities formed a joint venture with the Cosmo Construction Company, controlled by appellee Sieg-

fried, to perform two government construction contracts which had been awarded to Ottinger's companies. Before the contracts were completed the parties to the joint venture agreed in writing to dissolve it, Cosmo Construction Company agreeing to complete the contracts and relieve Ottinger's companies of any further responsibility thereunder.

The claim in suit is that prior to the execution of the written dissolution agreement and to induce Ottinger to enter into it, Siegfried orally agreed to pay Ottinger an amount equal to one-half of all sums recovered by Cosmo Construction Company from the government on claims for extra work in the performance of the two government contracts. It is agreed that the contracts were completed by Cosmo Construction, and claims in the amount of $733,533.08 were allowed and paid by the government. The sole issue submitted to the jury was whether the parties "did enter into an oral agreement as alleged by the plaintiff".

The facts bearing upon the dissolution agreement and having relevancy to the alleged oral agreement are as follows. The contracts were being performed in Texas and Ottinger's brother Clyde, who died before trial, was project manager. In November, 1957, Clyde Ottinger went to Siegfried's office in Tulsa, apparently to discuss with Siegfried dissolution of the joint venture. Appellant Ottinger was called and went to Siegfried's office the next day. There was discussion concerning the termination of the joint venture with take-over by Cosmo. Nothing was

"worked out" as to "just how a settlement would be made", but Cosmo was interested in taking over the job. The Ottingers were to go back to Houston and "see how each of us would be affected in Cosmo's taking over". They did meet in Houston with the Ottingers' and Cosmo's accountants. Thereafter the Ottingers went to Tulsa and the appellant went to Siegfried's home alone. According to Ottinger's testimony, he and Siegfried met in Siegfried's living room and orally agreed that Siegfried would pay Ottinger "one-half of the claims which would ultimately come from the United States Government on this job". Later in the day, Clyde Ottinger went to the Siegfried home and an attorney was called to dictate the dissolution contract. It was dictated to be transcribed and submitted to the parties. At that time, the appellant expressed his wish to attach an "addendum to the contract". Appellant's accountant prepared the addendum from an operating statement furnished him by Cosmo's accountant; appellant attached it to the contract; and the contract was then executed by the parties in duplicate. This addendum showed that on the date of the dissolution one of the contracts was being performed at a profit and the other at a loss and the total loss was $369,532.61. It also showed that Ottinger owed the joint venture a total of $337,603.38 which, according to the addendum, was the total agreed consideration for Ottinger's one-half interest in the joint venture.[1]

Ottinger sought to prove by his accountant that the addendum which he

---

1. The addendum provided in pertinent parts as follows:

| | |
|---|---|
| Ottinger Construction Co. debt to Cosmo | $ 13,515.76 |
| Material to Louisiana debt to Cosmo | 5,737.96 |
| Ottinger's net drawings from C & O | 133,583.35 |
| Capital deficit, Otco Contractors | 184,766.31 |
| Total according to Cosmo | $337,603.38 |

---

Ottingers' net drawings from C & O represents the $230,000 withheld less $100,-000 expended for new equipment to be used in performance of the contracts.

These withdrawals together with the capital deficit apparently account in part for the net operating loss.

had prepared and which had been attached to the dissolution agreement was not a true and correct reflection of the "profit figure or loss figure of such joint venture" as of the date of dissolution; that "a readjustment of the addendum based on good accounting principals * * * would show that in effect when E. C. Ottinger assigned his interest in the contract he assigned an extremely valuable interest to his detriment * * * it being the theory of the plaintiff * * * that he would not have entered into a written agreement had he not been induced to do so" by Siegfried's promise to divide the claims by half.

The theory of admissibility as we understand it is to the effect that on its face the addendum indicates that Ottinger withdrew from a losing joint venture to which he was indebted by reason of his withholding performance estimates paid by the government; that the impression created by this factual situation tends to impune, if not destroy, the believability of his oral contract thesis; and that he was, therefore, entitled to counteract this impression by showing the true circumstances under which he says the parties orally contracted. Siegfried objected to this evidence on the ground that Ottinger was "attempting to go behind the addendum which he prepared and which was a part of the contract he signed". The trial court sustained the objection on the ground that the addendum "doesn't have anything to do with this lawsuit".

■ Whatever may be said of the competency or relevancy of the proffer, we are certain that it was not impermissible impeachment, for one who introduces evidence, either testimonial or documentary, is not thereby precluded from explaining it or even contradicting it in the interest of truth. See United States v. Freeman, 2 Cir., 302 F.2d 347, 351 and authorities cited; Trice Production Co. v. Dutton Drilling Co., Tex.Civ.App., 333 S.W.2d 607, 612; Wigmore on Evidence, 3rd Ed. §§ 896, 908; 20 Am.Jur., Evidence, § 915, pg. 771. Nor do we think

the addendum can be said to be wholly irrelevant to the issue in suit.

While we have been cited no case or comment treating a similar or even analogous situation, common sense teaches us that Siegfried was less likely to have orally agreed to divide the proceeds of any allowed claims arising out of performance of a losing venture than a profitable one, especially when the loss was due to Ottinger's withholding of performance estimates. This much is manifest by counsel's adroit argument to the jury calling attention to the situation reflected in the addendum.

Considered in its most favorable light, Ottinger has a heavy psychological oar to prove the existence of an oral contract contemporaneously with a written contract seemingly complete as to the terms of the dissolution of the joint venture. The facts on the face of the addendum were inconsistent with the very existence of the alleged oral contract, and certainly appellant ought to be permitted to present to the jury his version of the circumstances under which he says the oral contract was consummated. After all, a lawsuit is a search for truth, and rules of evidence are designed and should be utilized to bring the whole truth of a case before the trier of the facts.

■ We, of course, should not reverse the case for the exclusion of the proffer unless we are reasonably sure not only that the testimony was competent, but that its exclusion was prejudicial to appellant's right to a fair trial based upon all of the competent evidence. See Rule 61, F.R.Civ.P.; Moore, Federal Practice, § 61.07. From what we have said, it is plain, we think, that the proffer might well have affected the outcome of the lawsuit, and its exclusion, therefore, was prejudicial to appellant's cause. Cf. Jones v. Union Auto. Indem. Ass'n of Bloomington, Ill., 10 Cir., 287 F.2d 27.

■ Appellant also offered to prove by his own testimony that when the parties orally contracted to divide the claims amounting to $1 million or $1½ million, he was of the expert opinion that Cosmo

would ultimately recover only about 20% to 25% and that the parties were, therefore, contracting for the division of about $200,000 to $250,000. He says that he should have been permitted to show his unrevealed estimate of the worth of their contract on the theory that the jury was more likely to believe that the parties were contracting for division of $200,000 than $1 million, or $733,533.08, the amount eventually recovered.

We think this hypothesis entirely too remote to have any evidentiary value whatsoever. Ottinger's undisclosed and unexpressed estimate of the value of the claims could have no relevancy to the question whether they actually did contract or whether the jury believed they did.

The case is reversed and remanded with directions to grant a new trial in accordance with the views herein expressed.