In the Matter of **KOMFO PRODUCTS CORPORATION, Bankrupt.**

No. 27055.

United States District Court
E. D. Pennsylvania.

Nov. 9, 1965.

Peter P. Zion, Philadelphia, Pa., for reclamation petitioner.

Wexler, Mulder & Weisman, by Horace A. Stern, Philadelphia, Pa., for trustee.

JOSEPH S. LORD, III, District Judge.

The reclaimant in this bankruptcy proceeding asks us to review and reverse the decision of the referee. The reclaimant's petition asserts her right to certain accounts receivable of the bankrupt corporation and to proceeds of the sale of its inventory. The trustee claims title to the property, and the referee has upheld his claim.

The sequence of events which gave rise to this controversy is not really in dispute. On February 21, 1961 the reclaimant and the bankrupt, Komfo, entered into an agreement, by the terms of which the reclaimant was to make advances of

money to Komfo, to be secured by an assignment of accounts receivable. Two days later, reclaimant filed with the Prothonotary of Philadelphia County a financing statement disclosing her security interest in the accounts receivable. On June 22, 1961 reclaimant and Komfo entered into a second agreement to the same effect, except that Komfo agreed to assign as security all of its inventory and the accounts receivable created out of such inventory to the reclaimant. A financing statement for this transaction was filed with the County Prothonotary on the same day. No such statement for either transaction was filed with the Secretary of the Commonwealth of Pennsylvania until October 19, 1961 when both were duly filed.

Pursuant to these agreements, reclaimant advanced a total of $14,800 to Komfo for the operation of its business, but it was not enough. On October 9, 1961—ten days before the filing of financing statements with the Secretary of the Commonwealth—Komfo made an assignment of its assets for the benefit of creditors. On November 13, 1961 an involuntary petition in bankruptcy was filed against Komfo alleging the assignment for the benefit of creditors as the act of bankruptcy. Thereafter, reclaimant sought to reclaim the security for the unrepaid portion of her loans from the bankrupt's estate, but the trustee resisted on the ground that his rights are those possessed by the assignee for the benefit of creditors and that reclaimant's security interest was unperfected at the time the assignment for the benefit of creditors was made and thus subordinate to it.

■ The trustee's rights, if any, derive from Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110. He makes a three-pronged attack on the reclaimant's position, claiming title to the accounts and inventory under three separate subsections of Section 70. If he prevails under any one, title passed to the trustee and reclaimant's petition must be denied. Matter of Rosenberg Iron & Metal Co., 343 F.2d 527, 530 (C.A.7), cert. denied sub nom. Dempster Bros. v. Cohn, 86

S.Ct. 163 (1965). We shall consider them in order.

## I.

The first prong is Section 70, sub. a (8), which gives the trustee title to "property held by an assignee for the benefit of creditors appointed under an assignment which constituted an act of bankruptcy * * *." The crucial question, therefore, is whether the assignee for the benefit of creditors had a property right superior to that of reclaimant, and this depends in turn on what the interest of reclaimant was in the accounts receivable and the inventory at the time of the assignment for the benefit of creditors.

■■ While the Bankruptcy Act governs the respective rights of the parties, the initial relationships are created and determined by state law. Holt v. Crucible Steel Co., 224 U.S. 262, 32 S.Ct. 414, 56 L.Ed. 756 (1912); Pacific Fin. Corp. v. Edwards, 304 F.2d 224, 227 (C.A.9, 1962); Matter of Kravitz, 278 F.2d 820, 822 (C.A.3, 1960); In re Consorto Const. Co., 212 F.2d 676, 678 (C.A.3), cert. denied sub nom. Klein v. Equity Inv. Co., 348 U.S. 833, 75 S.Ct. 57, 99 L.Ed. 657 (1954). Article 9 of the Pennsylvania Uniform Commercial Code applies to transactions "intended to create a security interest in personal property including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights." Act of April 6, 1953, P.L. 3, as amended by the Act of October 2, 1959, P.L. 1023, § 9–102, 12A P.S. § 9–102. The transactions in question between reclaimant and Komfo were intended to create such a security interest and so are within the purview of the Article.

■ Under Article 9, the trustee, claiming under the assignee for the benefit of creditors, would have an interest superior to the reclaimant's if the reclaimant's security interest were not perfected, for § 9–301 provides, with exceptions not here material, that "an unperfected security interest is subordinate to the rights of * * * (b) a person who becomes a lien creditor without

knowledge of the security interest and before it is perfected * * *." A lien creditor "includes an assignee for the benefit of creditors from the time of assignment * * *." § 9–301(3). The next problem is to ascertain whether reclaimant's interest was perfected by the time the assignment for the benefit of creditors was made.

"A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." § 9–303. Under Section 9–302, a financing statement "must be filed to perfect all security interests," except some which are not in question in this case. Section 9–401(1) (c) requires that the financing statement be filed in the office of the Secretary of the Commonwealth and, "if the debtor has a place of business in only one county of this state, also in the office of the prothonotary of such county * * *." Since the reclaimant had filed neither financing statement with the Secretary of the Commonwealth until after the assignment for the benefit of creditors had been made, she had not complied with the statutory requirements to perfect her security interest, and the rights of the assignee for the benefit of creditors would ordinarily be superior to hers.

The reclaimant maintains, however, that she falls within the ambit of § 9–401 (2) which allows a "filing which is made in good faith [but] not in all of the places required by this section" nevertheless to be "effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement." She contends that all the creditors did in fact have such knowledge, were not prejudiced in any way by her failure to file in both of the appointed places, and ought to be subordinated to her secured claim.

■■ The purpose of the filing requirements of the UCC, like recording requirements generally, is obviously to protect subsequent creditors who might not have extended credit had they known of an existing security interest. The Code requirements make that knowledge available and, at the same time, assure the prior security holder of his priority. Casterline v. General Motors Acceptance Corp., 195 Pa.Super. 344, 351, 171 A.2d 813 (1961). The filing puts subsequent creditors on notice. In the instant case there are no actual subsequent creditors and the failure to file would ordinarily be a harmless irregularity. But the UCC makes the assignee for the benefit of creditors a lien creditor from the time of the assignment, and he is consequently a creditor who, in the absence of notice of the prior security interest, would prevail. Cf. Matter of Dumont-Airplane & Marine Instruments, 203 F.Supp. 511, 513 (S.D.N.Y., 1962). Actual knowledge, however, on the part of any such creditor would be at least the equivalent of the notice that the statute requires. As the comment to § 9–401 states:

"When a secured party has in good faith attempted to comply with the filing requirements but has not done so correctly, Subsection 2 makes his filing effective in so far as it was proper, and also makes it good for all collateral against any person who actually knows from the improperly filed statement that a security interest was intended to be claimed in collateral wherever located. The subsection rejects the occasional decisions that an improperly filed record is ineffective to give notice even to a person who knows of it." 12A P.S. § 9–401, Comment, ¶4.

■■ If all creditors represented by the assignee for the benefit of creditors had knowledge of the contents of the inadequately-filed financing statements at the time the assignment for the benefit of creditors was made, then clearly reclaimant's security interest would have been effective against the assignee and against the trustee under Section 70, sub. a(8) of the Bankruptcy Act. Actual knowledge is a question of fact on which

reclaimant would have the burden of proof before the referee.[1]

We have not found a case in which it was actually decided that the knowledge of all the creditors of an otherwise unperfected security interest defeated the claim of a subsequent lien creditor. But Matter of Smith, 205 F.Supp. 27 (E.D. Pa., 1962); Matter of Luckenbill, 156 F.Supp. 129 (E.D.Pa., 1957); and Matter of Leiby, Bky. No. 26455, E.D.Pa., Jan. 29, 1962, all of which are relied on by the trustee, do not establish the contrary proposition. In all of these cases, secured creditors whose filings had been found defective were denied reclamation relief against the trustee because their interests were unperfected under the Code. In none of these cases was there any evidence that any subsequent creditor knew the contents of the financing statements. Indeed, in Matter of Smith, supra, 205 F.Supp. at p. 29, the court expressly stated that "there is no evidence that any person, whether it be the trustee or the creditors, had knowledge of the contents of the *financing* statement which was filed in the Prothonotary's office." The intimation of the opinion is that under § 9–401(2) a finding of such knowledge would have required a different disposition.

This conclusion is supported by Matter of Lux's Superette, 206 F.Supp. 368, 370 (E.D.Pa., 1962), in which Judge Freedman wrote that Section 9–401(2) "requires either a proper filing as to some property, or knowledge by creditors of the filing of a financing statement in one although not in both places. * * Neither of these conditions exists here. It follows that the security interest was not perfected."

Although reclaimant has not urged the point, the same result is compelled by §

9–301. Section 9–301(1) (b) provides that an "unperfected security interest is subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected."

In Matter of Babcock Box Co., 200 F. Supp. 80 (D.Mass.1961), decided under the Massachusetts UCC (not different in material part from the Pennsylvania provisions), the question was whether a secured creditor who had filed his financing statements with the Massachusetts Secretary of State and with the County Register of Deeds, but not with the appropriate city clerk, as required by the Massachusetts version of § 9–401 (1) (c), had an interest superior to that of the trustee in bankruptcy, who, it was found, had actual knowledge of the contents of the financing statements. It was held that while § 9–401(2) makes the filing *effective* against anyone with knowledge of the contents of the financing statements, it still does not *perfect* an unperfected security interest. Rather, the effect of the trustee's knowledge is governed by § 9–301, and § 9–301(3) provides (in both Massachusetts and Pennsylvania) that "Unless all the creditors represented had knowledge of the security interest such a representative of creditors [*i. e.*, a lien creditor, including a trustee or an assignee for the benefit of creditors] is a lien creditor without knowledge even though he personally has knowledge of the security interest." Since there was no contention in Babcock that all the creditors of the bankrupt "knew the contents of the financing statements" (200 F.Supp. at 82), the unperfected security interest was subordinated to the rights of the lien creditor (in that case the trustee in bankruptcy). However, if there had

---

1. While § 9–401(2) speaks of a filing "made in good faith," we construe that adjective phrase to be merely descriptive of a filing made "not in all of the places required." As Referee Hiller wrote in his opinion in Matter of Luckenbill, which is quoted by the reviewing court in that case, infra, 156 F.Supp. at 131, " 'It is difficult to understand moreover what the petitioner and the Code mean by a filing which is made "in good faith" in an improper place or not in all of the places required by the Code. One may ask, under what circumstances is a filing not made "in good faith"?' " Since we hold good faith to be descriptive and not mandatory, affirmative proof of good faith by reclaimant is unnecessary.

been proof of such knowledge, there is no reason why a contrary result would not have followed.

■ It is not necessary for us to decide on the facts of this case whether § 9–301 or § 9–401 is the applicable section, because regardless of which route is taken the result in the case at bar would be the same. If all the creditors represented by the assignee for the benefit of creditors knew of reclaimant's security interest at the time of the assignment, despite the fact that her filing was incomplete, reclaimant's interest would prevail over the assignee's and, derivatively, over the trustee's under § 70, sub. a of the Bankruptcy Act. Although the reclaimant must prove it, that knowledge need only be of the substance of the transactions and not of the details. U.C.C. § 9–402(1) only requires the financing statement itself to set forth the types of property covered, and § 9–110 deems "any description" sufficient "whether or not it is specific if it reasonably identifies the thing described." See Howarth v. Universal C. I. T. Credit Corp., 203 F.Supp. 279, 287 (W.D.Pa., 1962). No more should be necessary to constitute actual knowledge than would be required to be contained in the financing statements.

The evidence on the issue of actual knowledge is considered later in this opinion.

## II.

The trustee asserts that, even if he cannot defeat reclaimant's interest under § 70, sub. a of the Bankruptcy Act, § 70, sub. c furnishes him with an independent source of title to the accounts and inventory in dispute. We do not agree.

■ Section 70, sub. c, the so-called "strong-arm" clause, gives the trustee all the rights of a lien creditor upon all property upon which a creditor could have obtained a lien at the date of bankruptcy, whether or not a lien creditor actually exists. Since Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), it has

been settled that "the rights of creditors —whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of 'the date of bankruptcy' [the date the petition was filed], not at an anterior point of time." 364 U.S. at p. 607, 81 S.Ct. at p. 349. It is now clear—and the trustee concedes as much—that if reclaimant's security interest were perfected by the time the bankruptcy petition was filed, and unless there were an actual creditor who extended credit before her perfection, reclaimant's interest would be superior to the trustee's. It has even been held, following Lewis, that where the security interest is *not* perfected prior to bankruptcy but there are no subsequent creditors, the trustee cannot succeed to the property under § 70, sub. c "because the existence of an actual creditor who could have obtained a lien is a condition to the acquisition by the Trustee of the status of a creditor holding a lien." If "no actual creditor could have obtained a lien," neither could the trustee. Pacific Fin. Corp. v. Edwards, 304 F.2d 224, 228 (C.A.9, 1962). Contra, Matter of Rosenberg Iron & Metal Co., 343 F.2d 527, 530 (C.A.7), cert. denied sub nom. Dempster Bros. v. Cohn, 86 S.Ct. 163 (1965); Matter of Dumont-Airplane & Marine Instruments, 203 F.Supp. 511 (S.D.N.Y., 1962). In the case at bar, of course, reclaimant did perfect her security interest by her filings on October 19, 1961, nearly a month prior to the bankruptcy. Quite apart from the saving provisions of § 9–301 and § 9–401 of the U.C.C., her interest is, therefore, in the absence of any intervening creditor prior to her perfection, superior to the interest of the trustee. Lewis v. Manufacturers Nat'l Bank, supra; cf. Matter of Cichanowicz, 226 F.Supp. 288, 293 (E.D.N.Y., 1964).

■ The trustee contends, however, that an intervening creditor was in existence on the date of bankruptcy, to wit, the assignee for the benefit of creditors, who is a lien creditor under state law. The trustee seeks to piggy-back the strong-arm clause of the Bankruptcy Act on top of the strong-arm clause of §

9–301(3) of the U.C.C., which gives the assignee for the benefit of creditors the rights of a lien creditor from the time of the assignment. The difficulty with this reasoning is that, like the same argument under § 70, sub. a(8), it meets with reclaimant's contention that her security interest is superior to the interest of the assignee for the benefit of creditors, not because it was perfected prior to it—for it was not—but because all the creditors represented by the assignee allegedly had knowledge of her security interest. This contention was sustained with respect to § 70, sub. a, and it is equally meritorious with respect to § 70, sub. c. Section 70, sub. c may give the trustee a strong arm, but it does not give him an outstretched hand. We hold that the validity of the trustee's claim under § 70, sub. c depends on whether reclaimant can show actual knowledge of her interest on the part of the creditors represented by the assignee for the benefit of creditors.

### III.

 The final section on which the trustee relies is § 70, sub. e(1) of the Bankruptcy Act. That section permits the trustee to set aside any transfer or debt of the bankrupt which would be voidable for any reason under federal or state law "by any creditor of the debtor, having a claim provable under this Act * * *." Under this statute, there must be an actual creditor with a provable claim who could have voided the transfer or debt in the absence of bankruptcy. See 4 Collier, Bankruptcy ¶70.90 (14 ed. 1964). The trustee argues that the assignee for the benefit of creditors is such a creditor. The referee held that, although the assignee is a lien creditor, he is not a creditor "having a claim provable under this Act," within the meaning of § 70, sub. e(1). We agree with the referee.

### IV.

We have determined that reclaimant's case turns on her proof of actual knowledge of her security interest on the part

of all the creditors represented by the assignee for the benefit of creditors. It now becomes necessary to consider the evidence before the referee on that point.

At one of the hearings before the referee, counsel for the trustee introduced into evidence the assignment for the benefit of creditors for the purpose of proving "that there was an assignment before the security agreement was perfected." Record, Bankruptcy Cause No. 27055, p. 382. Counsel for reclaimant *objected to its admission* "unless they attach to it a letter of objection." Ibid. When counsel for the trustee replied that the letter in question was indeed attached, the assignment was received in evidence. Id. at 383. The present dispute centers around what it and the two letters attached to it prove.

The first of the two letters is from Komfo's counsel (who also represented reclaimant) to counsel for the assignee for the benefit of creditors, written as part of the negotiations over the then proposed assignment. It records, *inter alia,* counsel's objection to the provisions of the assignment unless it set forth that the right of the assignee for the benefit of creditors "is limited to the prior superior right of any security holder of any account receivable belonging to the corporation but which had been assigned to such security holder prior to the date of this assignment for the benefit of creditors." Record, pp. 391–392. To this portion of the letter counsel for the assignee for the benefit of creditors replied: "As to the accounts receivable we, of course, recognize that the assignment would be subject to any prior assignment which was validly made and properly filed in accordance with all the provisions of the Uniform Commercial Code." Id. at 394. But the letter from reclaimant's counsel continued:

"* * * All creditors have been informed and formally you and the other attorneys involved, as well as the assignee, have been informed in writing by me that the accounts receivable were assigned to Mrs.

Denison as a secured transaction in accordance with the Uniform Commercial Code, and which assignment or transaction was duly recorded in accordance with the requirements of that Act. * * *" Id. at 392.

To these assertions of fact counsel for the assignee for the benefit of creditors did not reply.

After the exchange of letters the assignment for the benefit of creditors was amended as follows:

"Subject to the conditions set forth in a letter by Peter P. Zion to Wexler, Mulder & Weisman, Esqs. of October 3, 1961, and the answering letter signed by Wexler, Mulder & Weisman, Esqs. of October 4, 1961. A copy of each letter is attached hereto and made part of this assignment." Id. at 389.

On October 9, 1961 the assignment for the benefit of creditors was executed by the president of Komfo, as assignor, and the assignee and was duly witnessed.

At the hearing counsel for the trustee made no effort to exclude the letters or any part of them from the consideration of the referee. On the other hand, counsel for the reclaimant did not indicate that he intended to use them as proof that all the creditors had knowledge of reclaimant's security interest until he made that argument to the referee after the hearing. The referee reached what was, in effect, an alternative conclusion with respect to that evidence. Either the letter from reclaimant's counsel was excluded from his consideration or, even if admissible, was proof only that the creditors were mistakenly informed and thus were not informed at all. Referring to the statement incorporated into the assignment by reference that "All creditors have been informed," the referee ruled that:

" * * * That is at best a self serving declaration and in the absence of what notice was given to creditors, cannot be taken seriously. Even so, of what were the creditors informed? That 'the accounts receivable were assigned to Mrs. Denison as a secured transaction in accordance with the Uniform Commercial Code, and which assignment or transaction was duly recorded in accordance with the requirements of that Act.' If the creditors were informed according to this statement, they were mistakenly informed and so the information amounted to nothing. I am constrained to hold that at the time of the assignment the assignee was a 'lien creditor' whose rights to the accounts and inventory would prevail over the rights of the secured party with an unperfected security interest. * * *" Id. at 83.

▮ It is our conclusion that the referee erred on both the admissibility and effect of the statement in question. It is true that self-serving declarations, oral or written, are ordinarily inadmissible in behalf of the party who made them. A. B. Leach & Co. v. Peirson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194 (1927); Emmons v. McCreery, 307 Pa. 62, 160 A. 722 (1932); Bednorzenski v. Schrager, 124 Pa.Super. 486, 189 A. 690 (1937). *But compare* Hellenic Lines v. Gulf Oil Co., 340 F.2d 398 (C.A.2, 1965); Golden West Const. Co. v. United States, 304 F.2d 753 (C.A.10, 1962). Nevertheless, we think the statement was admissible on two grounds.

▮ First, the letter was introduced, not by the party who made the self-serving declaration it contained and who would be benefited by it, but by the adverse party. This makes the statement in the letter an admission by reclaimant, not a self-serving declaration, even though it in fact benefits her. Although it is usually the case that an admission introduced by the adverse party is contrary to the interest of the declarant, there is no requirement to that effect. See Brown, Pennsylvania Evidence 132 (1949).

▮ Whatever may be said about the reasonableness either of the assumption

that statements made and offered by a party in his behalf are apt to be untrustworthy or that the admissibility of self-serving declarations might be an inducement to the fabrication of evidence (see the critique in McCormick, Evidence § 275 [1954]), these assumptions surely cannot be said to apply to statements introduced by the adverse party. For if the element which makes self-serving declarations inadmissible is the failure of the declarant to be sworn and subjected to cross-examination, then surely the adverse party cannot complain when it is he who foregoes these touchstones of reliability. It is significant that in the cases cited above in support of the general exclusion of self-serving declarations, it was the declarant who sought to introduce the statements in question. In each case the court held, as the Supreme Court expressed it in Leach, 275 U.S. at p. 128, 48 S.Ct. at p. 57, that "A man cannot make evidence *for himself* by writing a letter containing the statements that he wishes to prove" (emphasis supplied). We hold only that he *can* make evidence for an adverse party by writing such a letter.

■■■ Secondly, the statements in the letter were admissible because they were not merely contained in a letter from one attorney to another, but were part of the assignment for the benefit of creditors which the assignee for the benefit of creditors, under whom the trustee claims, had subscribed. When the trustee introduced the assignment into evidence, he was, of course, bound to introduce the letters which had been attached to and incorporated in it. The entire instrument was his evidence, and the statement that all creditors had been informed also constitutes an adoptive admission by the trustee contained in the assignment. McCormick, Evidence § 246 (1954); 4 Wigmore, Evidence § 1073 (3d

ed. 1940). If the trustee feels disadvantaged by his predicament it was created quite voluntarily when his predecessor in interest, the assignee for the benefit of creditors, signed the assignment. If the assignee had reservations about the truth of the assertions contained in the assignment or the letters, he ought not to have signed.

■■■ There is a further question not raised by the parties about the form of the statement in question. The letter reads that all creditors and the assignee "have been informed in writing" by counsel of reclaimant's security interest. The statement is somewhat brief and general but it is sufficiently factual not to be objectionable as a conclusion. In any event, conclusory statements offered as admissions are admissible in evidence. Pekelis v. Transcontinental & Western Air, 187 F.2d 122, 129 (C.A.2, 1951); McCormick, Evidence § 241 (1954).

■■■ The letter is, therefore, some proof of the facts asserted in it but like all admissions it may be controverted. What were those facts? The referee found that even if the creditors had been informed, they were informed that reclaimant's security interest had been perfected, which it had not. Record, p. 83. It does not follow that they were, as he concluded, informed of nothing. All they had to know about was reclaimant's security interest and of that they were informed, whether it was recorded or unrecorded, perfected or unperfected. Under the Code knowledge is a substitute for notice. It will not do to claim that when reclaimant's counsel informed the creditors he misled them in any way that is material in this proceeding. Once they knew of reclaimant's interest they were creditors with knowledge and the Code makes reclaimant's interest superior to the interests of such creditors.[2]

2. Neither is there any merit to the distinction the trustee seeks to make between "information" and "knowledge" under the U.C.C. The Code itself, in its definition section, tacitly equates the two when it provides that "A person 'notifies' * * * another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." § 1–201(26). The only coherent meaning of that subsection is that notice (not knowledge) is achieved when the notifier goes as far as he need reasonably do to in-

## V.

 This appears to be the first case in which the saving provisions of the UCC have been invoked by an allegation of knowledge of a reclaimant's unperfected security interest on the part of all the creditors represented. There has not yet been a full hearing on the issue of knowledge because reclaimant did not herself introduce the evidence of knowledge on which she relies; it was introduced by the adverse party for another purpose. Hence, no warning was given to the trustee that he would have to refute that point. Reclaimant's evidence of knowledge thus far, though competent, need hardly be conclusive. See Bruce v. McClure, 20 F.2d 330, 336 (C.A. 5, 1955). Although the assignment and the accompanying letters were introduced by the trustee, " * * * One who introduces evidence, either testimonial or documentary, is not thereby precluded from explaining it or even contradicting it in the interest of truth." Ottinger v. Siegfried, 349 F.2d 647, 649 (C.A. 10, 1965); see Wigmore, Evidence §§ 896, 908 (3d ed. 1940).

 Accordingly, we shall remand this case to the referee for a determination of whether all the creditors had knowledge of the security interest prior to the execution of the assignment for the benefit of creditors. Both parties will have the opportunity to present evidence on this issue. The referee will then be in a position to make findings of fact and, finally, conclusions of law not inconsistent with this opinion. The federal district court sitting in bankruptcy is a court of equity. Bankruptcy Act, § 2, sub. a, 11 U.S.C.A. § 11, sub. a; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Continental Ill. N. B. & T. Co. v. Chicago R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230

(1934); Matter of Laskin, 316 F.2d 70 (C.A. 3, 1963). In the circumstances here present, equity demands a new hearing solely on the issue of knowledge.

## ORDER

And now, November 9, 1965 upon a certificate for review the order of the referee of November 24, 1964 is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

---

*form* (i. e., make the recipient of notice *know*), whether or not the recipient of notice actually get informed (i. e., get the knowledge). Information and knowledge are used interchangeably, and when re-

claimant's counsel wrote that he *informed* the creditors he may fairly be taken to mean that he provided them with *knowledge.*